The WALT DISNEY COMPANY, Plaintiff,

v.

Carl POWELL t/a J & L Distributors, et al., Defendants.

Civ. A. No. 87–2434.

United States District Court, District of Columbia.

Nov. 3, 1988.

Arthur A. Levine, Washington, D.C., for plaintiff.

Alan H. Bernstein, Philadelphia, Pa., for defendant Powell.

### MEMORANDUM

GESELL, District Judge.

Originally this was a multi-defendant action seeking an injunction and damages arising out of alleged unauthorized use of plaintiff's copyright and trade dress rights to the well-known Disney characters Mickey Mouse and Minnie Mouse. All defendants settled except J & L Distributors ("J & L"), which has admitted liability, but comes before the Court contesting the necessity of any relief, except possibly token damages. The parties presented evidence and briefed and argued the issues. The Court takes jurisdiction under the Copyright and Lanham Trademark Acts, 17 U.S. C. § 101 *et seq.*, and 15 U.S.C. § 1051 *et seq.* This Memorandum constitutes the Court's findings of fact and conclusions of law.

J & L is based in Washington, D.C. At all times relevant to the case, its manager and owner, Carl Powell[1], conducted a wholesale souvenir business selling items to the local tourists through street vendors. Some 40 or more vendors, 20 of whom rented vending trucks from J & L, purchased items from J & L and resold them at sites along the Mall and at other tourist attractions. This was a highly lucrative operation, J & L grossing over $1 million a year, and individual vendors making net profits as high as $1,000 a day at the best vending spots.

A major part of J & L's wholesale line consisted of T-shirts and sweatshirts which Powell purchased and either printed or ordered others to print with various phrases and designs. J & L created some designs itself, but much of its business exploited, without authorization, established trademarks of prominent concerns. Disney's Mickey Mouse and Minnie Mouse appeared in various forms and colors on T-shirts and sweatshirts of all sizes created by J & L. This counterfeiting was conducted without any copyright license and mimicked plaintiff's well-established trade dress.

Upon receiving a complaint of this gross infringement from a licensed retail concern in the District of Columbia to the effect that the wide distribution of such counterfeit goods was stanching legitimate retail business, Disney authorized an investigation. In the course of a series of visits to J

---

1. Carl Powell and Carroll Powell, named as de-    fendants, are the same person.

& L's two warehouses and parking lot from which the illicit business was conducted, plaintiff's investigator obtained highly pertinent information. His testimony and contemporaneous reports leave no doubt that Powell was acting recklessly, willfully and knowingly, always conscious he was violating plaintiff's trademark rights. During the investigation of his business, Powell was plowing capital into his operation, having recently invested $85,000 in a particular printing machine. J & L did not keep normal business records. It conducted much of its business in cash, purposely, and had no record of infringing sales or profits to conceal its identity and purpose. J & L admits to having sold 160 dozen adult-size shirts, 20 dozen children's size shirts and six dozen hooded shirts that infringed Disney's rights. The fact that it did not hold itself out as an authorized licensee or actually print the copyright designation itself on the goods was solely because it feared this further abuse might result in a criminal conviction.

After the investigation had gathered much of this evidence, plaintiff filed its complaint without prior warning or notice to J & L.

J & L's activities clearly harmed plaintiff in the District of Columbia and elsewhere. They detracted from plaintiff's substantial income from licensing Mickey and Minnie, and involved use of its trade dress in an inappropriate manner. For instance, one sweatshirt of Mickey and Minnie depicts them wearing Georgetown Hoya shirts, thereby making *Disney* look like an infringer. (Plaintiff's Exhibit # 43). Moreover, J & L's use of cooperating illegal printers in other cities widened the harm from these infringements: apparently one printer pirated the designs from J & L and sold them to customers in other areas.

■ J & L asserts that the entire lawsuit was unnecessary, that all plaintiff had to do was to state its objection and it would have ceased business, that it has been put to unnecessary expense and inconvenience and that no damages should be assessed or injunction issued.[2]

■ These protestations are wholly unacceptable to the Court. Disney's copyrights in Mickey Mouse and Minnie Mouse will be enforced as to exact copies and variations of Mickey and Minnie. These variations are classic examples of trade dress violations, for Mickey and Minnie have acquired not only a secondary meaning, but a meaning of great value, favorable in all respects, and well-entrenched worldwide. Powell's free ride on the ingenuity, skillful promotion, and resulting public acceptance which Disney has rightfully gained from these charming mouse characters must come to an end.

The Nation's Capital takes pride in its tourist business, and those who prey on it with illegal and often shoddy items do not serve the community well. Even though the local government may tolerate such activities, the federal courts are charged by Congress with an obligation to assess statutory damages in order to protect property rights of this kind when they are consciously, willfully and persistently abused. The Court is awarding statutory damages, rather than actual damages, due to the unavailability of proof relating to Powell's infringement profits or plaintiff's exact damages. The Court will enter a permanent injunction and defendant shall be required to pay reasonable attorney fees.

*The Injunction.*

■ A permanent injunction is clearly required. Powell's counsel makes much of Powell's "cooperation" and reformation. The Court has serious doubt that defendant's professed reformation is more than skin deep. Powell's "cooperation" in large part was simply a recognition of the strength of Disney's ability to show that its marks and trade dress were blatantly infringed. The investigator's reports and testimony establish Powell's continuing ambivalence regarding possible future opera-

---

2. J & L even hinted at, but did not pursue, an affirmative defense to its admitted infringements. Among other portraits of the trade dress, Mickey Mouse and Minnie Mouse appear as black skinned. Defendant intimates his infringement is somehow protected by the First Amendment to the Constitution. That Amendment gives no right to steal another's statutorily protected intellectual property. 17 U.S.C. § 106(1) & (2). *See also, Dallas Cowboys Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184, 1188 (5th Cir.1979).

tions in copyright infringement, operations which had been so lucrative to him in the past. His voluntary cessation did not occur even after some of his goods were seized on a federal warrant by another party, the Hard Rock Cafe, whose mark Powell was also exploiting. After the Hard Rock Cafe raid, defendant first said he could not consummate the deal for the ersatz Disney merchandise with the investigator, then later he said that maybe he could. Also, Pepsi, Playboy and Georgetown University each complained about infringements of their marks. As the illegality of his affairs faced increasing exposure, Powell suddenly reformed. Only when he was fully conscious of what he was facing did he discuss the matter with an experienced attorney.

Counsel's insistence that Disney should not have singled Powell out but should have moved against the small vendors he supplied overlooks the key role Powell played in illegal sales and distribution. An injunction is thus necessary, and one in a somewhat more limited form than that proposed by plaintiff shall issue in the form attached.

*Damages.*

■ Defendant suggests limiting damages to the figure at which two other lesser lights settled pretrial. The Court declines this suggestion. Powell's were not technical violations or infringements through good-faith oversight. This is a case of gross impropriety wholly without justification, as the proof showed. Six different infringements were proven by a preponderance of the evidence. (Plaintiff's Exhibits 42, 43, 44, 45, 46, some of which violate both Mickey and Minnie). It is unnecessary to consider the precise application of the copyright (Pl.Exs. 63–67) to each of these examples. They all, without any doubt, are counterfeits of plaintiff's trade dress, and Exhibit 46 is definitely an infringement of the copyright as well. These violations are not overlapping. Each no doubt represents a large volume of individual items sold. Each of these is subject to damages to be assessed pursuant to 17 U.S.C. § 504(c)(2). The Court assesses $15,000 for each violation, or $90,000, plus interest from the date of judgment. Defendant did not reproduce the physical

mark, so he escapes the treble damage provision of 15 U.S.C. § 1117(b).

*Legal Fees.*

■ Powell does not dispute the amount documented and claimed by plaintiff as representing a reasonable value for his attorney work. However, he asks the Court not to assess any legal fees. His argument against fees attempts to minimize the extent of his violations and suggests he has limited resources, a factor based only on his dubious work and not exhibited at trial. Powell also suggests settlement could have been accomplished if prior notice had been given, but at no point to date has defendant responded to plaintiff's overtures with a reasonable offer. Moreover, the owner of a copyright has no obligation to give prior notice if he chooses to move vigorously to enforce his rights where fraudulent counterfeiting such as this is involved. In terms of the Lanham Act, this is an exceptional case of willful infringement. 15 U.S. C. § 1117 and 17 U.S.C. § 505 apply. Reasonable attorney fees of $20,000 are hereby assessed, and, in addition, plaintiff shall recover his costs, to be fixed by the Clerk of Court. An Order of Judgment and Permanent Injunction is filed herewith.