**WALT DISNEY COMPANY, Appellee,**

v.

**Carl POWELL, et al., Appellants.**

**No. 88–7266.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 26, 1990.

Decided March 6, 1990.

Alan H. Bernstein, Robert S. Silver, with whom Gary S. Marx, Washington, D.C., was on the brief, for appellants.

Arthur J. Levine, with whom Richard L. Stroup, Washington, D.C., was on the brief, for appellee.

Before WALD, Chief Judge, and RUTH BADER GINSBURG and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Carl Powell appeals from all three parts of a decision of the district court in a copyright infringement suit instituted against Powell, trading as J & L Distributors, by the Walt Disney Company ("Disney"). Pursuant to 17 U.S.C. § 504(c)(2), the district court awarded Disney statutory damages in the amount of $15,000 for each of six copyright infringements it found Powell had committed. It also awarded Disney $20,000 in attorneys' fees pursuant to 17 U.S.C. § 505. Finally, pursuant to 17 U.S.C. § 502, the court permanently enjoined Powell from infringing Disney's copyrights on the characters in suit—Mickey Mouse and Minnie Mouse—and all other Disney cartoon characters, including, but not limited to, the copyrights in the characters Donald Duck, Huey, Duey, Louie, Pluto, Goofy and Roger Rabbit. We affirm both the district court's award of attorneys' fees and its issuance of a permanent injunction. Because, however, we hold that only two works were infringed, we vacate the district court's judgment finding Powell guilty of six infringements

and ordering him to pay Disney $15,000 for each, and remand to the district court for a redetermination of damages.

## I. BACKGROUND

At the time this suit arose, appellant conducted a wholesale souvenir business, selling items to local tourists through street vendors. Included in his inventory were shirts with mouse faces printed on them that resembled Mickey and Minnie Mouse. Since, as the district court found, Powell "did not keep normal business records," Memorandum Opinion ("Mem. op.") 698 F.Supp. 10, 12, it is not possible to determine how many of these shirts he sold and how much profit he accrued from selling them.

During the time Powell was selling the mouse-face shirts, representatives of the Hard Rock Cafe, whose mark Powell was also infringing, Mem. op. 698 F.Supp. at 12, executed a search and seizure order at the J & L premises. Powell claims that after this raid, he stopped selling the shirts and "confine[d] sales solely to clearly authorized merchandise." Appellant's Brief at 9. Disney subsequently brought suit.

At trial, appellant admitted liability, Appellant's Brief at 11, but contested the propriety of relief beyond token damages. Much of his argument focused on his good faith, including his voluntary cessation of infringement, about which the district judge said the following:

> Powell's counsel makes much of Powell's "cooperation" and reformation. The Court has serious doubt that the defendant's professed reformation is more than skin deep. Powell's "cooperation" in large part was simply a recognition of the strength of Disney's ability to show that its marks and trade dress were blatantly infringed. The investigator's reports and testimony establish Powell's continuing ambivalence *regarding possible future operations in copyright infringement*, operations which had been

lucrative to him in the past. His voluntary cessation did not occur even after some of his goods were seized on a federal warrant by another party, the Hard Rock Cafe, whose mark Powell was also exploiting.... Also Pepsi, Playboy and Georgetown University each complained about infringements of their marks. As the illegality of his affairs faced increasing exposure, Powell suddenly reformed.

Mem. op. at 698 F.Supp. at 12–13 (emphasis added).

The district judge also found that Powell's infringements were willful. Mem. op. 698 F.Supp. at 12. Relying on the six copyrights of Mickey and Minnie Mouse entered into the record by Disney, the district judge found Powell guilty of six infringements and awarded Disney $15,000 per infringement. He also awarded Disney $20,000 in attorneys' fees and permanently enjoined Powell from infringing Disney's copyrights on the characters in suit and all other Disney cartoon characters.

## II. ANALYSIS

Powell argues that the district judge abused his discretion in granting the permanent injunction, awarding attorneys' fees and awarding $90,000 in statutory damages. We will address each of his claims in turn.

### A. *The Permanent Injunction*

Powell's claim that the district court abused its discretion in permanently enjoining him from future infringements of the characters in suit and all other Disney cartoon characters is without merit.[1]

■ When a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction. *Universal City Studios v. Sony Corp. of America,* 659 F.2d 963, 976 (9th Cir.1981), *rev'd on other grounds,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).[2]  "Gener-

---

1. 17 U.S.C. § 502(a) provides that:

   [a]ny court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such

terms as it may deem reasonable to prevent or restrain infringement of a copyright.

2. Recently, we stated the converse of this rule. *See Reader's Digest v. Conservative Digest,* 821

ally, it would appear to be an abuse of discretion to deny a permanent injunction where liability has been established and there is a threat of continuing infringement." M. & D. Nimmer, 3 *Nimmer on Copyright,* § 14.06[B] at 14–55–14–56 (1989).

■ Powell argues that since he voluntarily ceased infringing Disney's copyrights, there is no basis to assume that he will infringe them again in the future. The judge disagreed. He interpreted appellant's decision to cease infringing in a more Machiavellian light. The judge concluded that like Boris and Natasha, Snidely Whiplash and Bluto,[3] Powell simply took the action that best suited him at the time; he was caught red-handed, thus "as the illegality of his affairs faced increasing exposure, Powell suddenly reformed." [4] Mem. op. 698 F.Supp. at 12. Consequently, the judge found it not unlikely that Powell would attempt to infringe Disney's copyrights in the future. Since there is nothing in the record contradicting the judge's finding, we conclude that he acted within his discretion in granting the injunction. *See Universal City,* 659 F.2d 963.

Powell argues alternatively that even if the injunction against future infringements of Mickey and Minnie was appropriate, the district court abused its discretion by extending it to Disney characters not in suit, the aforementioned Huey, Duey, Louie, *et al.* Powell is wrong. Where, as here, liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains, it is appropriate to permanently enjoin the fu-

ture infringement of works owned by the plaintiff but not in suit. *Encyclopedia Britannica Educational Corp. v. Crooks,* 542 F.Supp. 1156, 1187 (W.D.N.Y.1982); *Ortho–O–Vision, Inc. v. Home Box Office,* 474 F.Supp. 672, 685–86 (S.D.N.Y.1979).

### B. *Attorneys' Fees*

Powell's claim that the district court abused its discretion in awarding Disney attorneys' fees requires only brief discussion.[5]

■ In *Reader's Digest,* 821 F.2d at 808, without taking sides, we noted that some courts have required a finding of deliberate infringement as a precondition to an award of fees, *see Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 493 (9th Cir.1985), while others have permitted such awards even when the infringement was not deliberate. *See Lieb v. Topstone Indus.,* 788 F.2d 151, 155–56 (3rd Cir.1986); *see also Engel v. Teleprompter,* 732 F.2d 1238, 1241 (5th Cir. 1984) ("Where a statute ... authorizes a fee award, such an award becomes the rule rather than the exception, and should be awarded routinely as are costs of suit."). Since the district court found that Powell's infringement was deliberate, that Powell acted "recklessly, willfully and knowingly," Mem. op. 698 F.Supp. at 12, the award of $20,000 in fees was clearly within the district court's discretion even under the more stringent standard.[6]

### C. *The Award of $90,000 in Statutory Damages*

A copyright owner may elect an award of statutory damages "instead of actual dam-

---

F.2d 800, 807 (D.C.Cir.1987) ("When a defendant has ceased its infringing conduct and shows no inclination to repeat the offense, a court may not issue a[ ] permanent injunction....").

3. Boris and Natasha are the evil villains from the Saturday morning television cartoon entitled "Bullwinkle & Friends." Snidely Whiplash is the dastardly opportunist who hails from the competing cartoon, "Dudley Do Right." Bluto is Popeye's nemesis.

4. In apparent agreement with the district judge, counsel for Powell said at argument on appeal,

"Powell did not cease infringing because he is a good guy, but what difference does that make?"

5. 17 U.S.C. § 505 provides in relevant part:
   [T]he court in its discretion may allow the recovery of full costs by or against any party.... [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

6. We need not decide which standard for an award of attorneys' fees under the Copyright Act is the correct one.

ages and profits." 17 U.S.C. § 504(c)(1). Statutory damages in this action could have ranged from a minimum of $250 to a maximum $10,000 for infringement of *"any one work." Id.* (emphasis added). If the infringement were willful, however, the maximum could be increased to $50,000 per infringed work. 17 U.S.C. § 504(c)(2).

Here, finding that Powell willfully infringed Disney's copyrights, Mem. op. 698 F.Supp. at 12, the district judge elected to award $15,000 for each infringement he found. In explaining his decision on damages, the district judge said:

> Six different *infringements* were proven by a preponderance of the evidence.... It is unnecessary to consider the precise application of the copyright to each of these examples. They all, without any doubt ... definitely infringe [Disney's] copyright.... These violations are not overlapping.... Each of these is subject to damages to be assessed pursuant to 17 U.S.C. § 504(c)(2). The Court assesses $15,000 for each violation, or $90,000, plus interest from the date of judgment.

Mem. op. 698 F.Supp. at 13 (emphasis added).

■ The district court erred in assessing damages based upon six "violations," mistakenly focusing on the number of infringements rather than on the number of works infringed. Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements.

7. *See also* II, P. Goldstein, *Copyright* § 12.2.2.2(a) at 349 (1989) (Under § 504(c), "an infringer will be liable for a single statutory award whether it makes one copy of a copyrighted painting or one thousand, and whether it performs the copyrighted work once or nightly over a period of months.").

8. *Robert Stigwood Group, Ltd. v. O'Reilly*, 530 F.2d 1096, 1105 (2d Cir.1976) (Each unauthorized performance of rock opera protected by *three* overlapping copyrights covering the music, the libretto and the vocal score constitutes *one* assessable violation).

17 U.S.C. § 504(c)(1) authorizes a judge to award damages "for all infringements ... with respect to any one work." As the House Report on the bill explains, however, only one penalty lies for multiple infringements of one work. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. at 162 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5778 ("A single infringer of a single work is liable for a single amount ... *no matter how many acts of infringement are involved in the action* and regardless of whether the acts were separate, isolated or occurred in a related series.... Moreover, although the minimum and maximum amounts are to be multiplied where multiple 'works' are involved in the suit, the same is *not true with respect to multiple copyrights ... or multiple registrations.*") (emphasis added).[7]

The Act does not define "work" but explains that "all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1). Courts and scholars have gone further, however, in defining "work" for the purpose of determining damages. The Second Circuit has explained that separate copyrights are not distinct works unless they can "live their own copyright life."[8] In the same vein, one of its district courts has determined that where separate copyrights "have no separate economic value, whatever their artistic value, they must be considered part of [a] ... work for purposes of the copyright statute."[9] Nimmer has similarly stated that "in order to qualify for a separate minimum award, the work which is the subject of a separate copyright would have to be in itself ... viable." Nimmer, *supra* at § 14–04[E] at 14–40.13.

*Stigwood,* however, arose under the 1909 copyright law, which permitted multiple awards for multiple infringements of the same work. This case arises under the 1976 Act, and as noted above, the House Report to the 1976 Act makes clear that multiple infringements of one work by a single infringer constitute one statutory violation.

9. *RSO Records, Inc. v. Peri,* 596 F.Supp. 849, 862 n. 16 (S.D.N.Y.1984) (§ 504(c)(1) precludes recovery of multiple statutory awards where "plaintiffs have copyrighted both graphics for a recording and the recording itself.").

■ While Mickey and Minnie are certainly distinct, viable works with separate economic value and copyright lives of their own, we cannot say the same is true for all six of the Disney copyrights of Mickey and Minnie in various poses which the district court found to be infringed in this case. Mickey is still Mickey whether he is smiling or frowning, running or walking, waving his left hand or his right. Thus, we find that Powell's mouse-face shirts infringed only two of Disney's works.[10]

### III. CONCLUSION

The district court acted well within its discretion in awarding both attorneys' fees and a permanent injunction to Disney. The district court erred, however, in finding Powell liable for six copyright infringements. We hold that he infringed only two works. We therefore affirm the district court's award of attorneys' fees and a permanent injunction but vacate its judgment ordering Powell to pay Disney $15,000 in statutory damages for each infringement of six separate copyrights, all featuring either the Mickey or Minnie Mouse characters. We remand to the district court for a redetermination of damages based upon our holding that it is the number of works, not the number of infringements, that counts.

*So ordered.*

---

**10.** Two of the copyrights that Disney argued Powell infringed portrayed Mickey and Minnie in poses used in the movie "Steamboat Willie." While "Steamboat Willie" is a work that has a distinct economic value and a copyright life of

its own, Powell did not infringe any elements of the movie other than Mickey or Minnie. Thus his infringement on the characters completely overlaps any infringement of the movie.