In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 17-2241 & 18-2534

AMY LEE SULLIVAN, d/b/a DESIGN KIT,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

FLORA, INC.,

*Defendant-Appellant,*
*Cross-Appellee.*

———————————

Appeals from the United States District Court for the
Western District of Wisconsin.
No. 3:15-cv-298 — **William M. Conley**, *Judge.*

———————————

ARGUED FEBRUARY 8, 2019 — DECIDED AUGUST 21, 2019

———————————

Before FLAUM, BARRETT, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* This appeal presents a question of first impression for us on the scope of statutory damages recoverable under the Copyright Act of 1976. Section 504(c)(1) of the Act permits a copyright holder "to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to

any one work," with Congress separately instructing that, in determining statutory damages, "all the parts of a compilation or derivative work constitute one work." This case requires us to determine what constitutes "one work" in a fact pattern where a jury found infringement on multiple works registered in a single copyright application.

Amy Sullivan, a graphic design artist, produced a series of 33 illustrations for Flora, Inc., an herbal supplement company, to use in two advertising campaigns. Upon noticing that Flora was using the illustrations in other ads, Sullivan brought suit for copyright infringement and opted to pursue statutory damages. She did so to maximize her potential payout by classifying each of her 33 illustrations as "one work" within the meaning of § 504(c)(1) of the Copyright Act. Flora disagreed, contending that the illustrations were part of two broader compilations and thus, if Sullivan prevailed, § 504(c)(1) limited her to just two statutory damage awards—one award for infringement on the illustrations used in each of the two advertising campaigns. The district court agreed with Sullivan, and instructed the jury that she could recover separate awards of statutory damages for 33 acts of infringement on 33 separate illustrations. The jury found infringement on each of the 33 illustrations and returned a statutory damages award of $3.6 million.

On appeal Flora challenges the district court's ruling on statutory damages and separate rulings on two additional defenses to liability asserted at trial. While procedural shortcomings defeat these latter two challenges, Flora is right that the district court committed error in permitting separate awards of statutory damages unaccompanied by any finding that each or any of the 33 illustrations constituted "one work"

within the meaning and protection of § 504(c)(1) of the Copyright Act. It is neither appropriate nor possible for us to make that finding on the record before us. So we vacate the judgment in Sullivan's favor and remand for further proceedings.

## I

Flora, Inc. manufactures herbal supplement and health products. In 2013, looking to produce advertisements for two new products, "7-Sources" and "Flor-Essence," the company contacted freelance production specialist Joseph Silver to develop two animated videos. Unbeknownst to Flora, Silver then contacted Amy Sullivan, a Wisconsin-based graphic design artist, to develop illustrations that would then be animated for use in the advertisements. In Sullivan's written agreement with Silver, she granted Flora exclusive rights to her illustrations in the two specified advertising campaigns.

Over the following months, Silver and Sullivan corresponded to develop the illustrations. Silver made suggestions on color, style, and text, while also offering rough outlines and sketches to guide Sullivan's work. For her part, Sullivan used digital design software to create the ultimate illustrations, sometimes incorporating Silver's suggestions and other times not. Flora used Sullivan's illustrations in its final advertisements for the two product lines.

At some point in the summer or fall of 2013, Sullivan noticed that Flora was using her illustrations to promote other product lines. Exactly when the unauthorized use occurred is unclear. What the record shows for certain is that, on October 16, 2013, Sullivan sent Flora a letter complaining of copyright infringement. At that time, however, Sullivan had not (yet) registered her illustrations with the Copyright Office.

Sullivan subsequently did so in two copyright applications approved by the U.S. Copyright Office. Registration "VA 1-888-930" had an effective date of November 6, 2013 and covered the "7 Sources Illustration Collection." It listed 17 separate illustrations with names like "Frame7" and "7S-Bottle Illustration." Registration "VA 1-893-717" had an effective date of December 12, 2013 and covered the "FEV Illustration Collection," short for Flor-Essence. It listed 16 separate illustrations with names like "Frame-3," "Herbs," and "Amy Tex Bubble."

When settlement negotiations failed, Sullivan sued Flora for copyright infringement in the Western District of Wisconsin. The Copyright Act allows a plaintiff to choose to recover either statutory damages or actual damages. See 17 U.S.C. § 504(a). The choice must come before the entry of final judgment. See *id.* § 504(c)(1). As the litigation progressed, Sullivan chose to pursue statutory damages, with the parties then staking out opposing positions on the scope of a permissible award under § 504(c)(1). These competing positions frame the primary issue before us on appeal.

Flora contended that Sullivan's 33 illustrations fell into one of two compilations (corresponding with the company's two advertising campaigns in which the illustrations appeared and also aligning with the two copyright registrations) and thus § 504(c)(1) precluded Sullivan from receiving more than two separate awards of statutory damages—one for each compilation infringed. Sullivan begged to differ. She urged the district court to treat each of the 33 illustrations as 33 separate works entitled to 33 separate awards of statutory damages upon a showing that Flora infringed each work.

Who was right very much mattered, for Congress author-
ized an award of between $750 and $30,000 in statutory dam-
ages for each work infringed, and up to $150,000 per work if
a jury found willful infringement. See *id*. § 504(c)(2). Put most
simply, Sullivan wanted the copyrighted work multiplier to
be 33 and not two.

The district court addressed the issue pretrial. It did so by
focusing on Sullivan's copyright applications. The certificates
from the U.S. Copyright Office showed that Sullivan had reg-
istered each of the 33 illustrations in two applications, with
the illustrations grouped to correspond with Flora's two ad-
vertised product lines. The Copyright Act and its implement-
ing regulations allow the registration of multiple works this
way. See *id*. § 408(c)(1) (authorizing the extension of copyright
protection from a single registration to multiple works listed
in the registration application); 37 C.F.R. § 202.3(b)(4) (same).
Relying on these provisions and drawing upon the statute's
definition of "collective works," the district court determined
that "[Sullivan's] copyrighted works are collective works, in
which contributions, constituting separate and individual
works in themselves, are assembled into a collective whole."
See 17 U.S.C. § 101 (defining "collective works" this way).
From there the district court concluded that "the [33] individ-
ual illustrations are individual works, entitling Sullivan to
separate statutory damages awards." The case advanced to
trial against the backdrop of this ruling.

Trial proceeded in three phases. In phase one, the court
tasked the jury with determining whether Sullivan was the
sole author of the copyrighted works, or instead whether Sil-
ver was a joint author capable of granting his own rights to
Flora. In phase two, the jury considered whether Flora copied

and used Sullivan's illustrations without authorization. In phase three, the jury determined what statutory damages resulted from the infringement.

The jury ruled in Sullivan's favor at each phase. In phases one and two, the jury determined that Flora had copied and used Sullivan's illustrations willfully and without authorization and furthermore that the works were not joint works but instead belonged to Sullivan alone. At phase three, the jury awarded $3,600,000 in statutory damages, finding that Flora willfully infringed on each of Sullivan's 33 individual illustrations. The jury also found $143,500 in actual damages, which Sullivan declined in favor of the larger statutory award.

## II

Flora's main contention on appeal is that the district court committed legal error in determining that Sullivan could collect statutory damages for infringement on each of the 33 illustrations as separate works. Sullivan urges us to avoid the issue on the basis that Flora waived any challenge to the damages award by not expressly objecting to the district court's jury instruction. We cannot agree. While Flora could have objected, the fairest reading of the record is that the company—throughout the litigation—had made its position on statutory damages abundantly clear, including by briefing the issue during the pretrial proceeding that resulted in the district court's determinative ruling. The law required no more in this circumstance. See *Dresser Industries, Inc., Waukesha Engine Div. v. Gradall Co.*, 965 F.2d 1442, 1450 (7th Cir. 1992) (explaining that the failure to object to a jury instruction embodying a legal determination "may be disregarded if the party's position had previously been clearly made to the court and it is plain

that a further objection would be unavailing"). So we proceed to the merits.

A

The scope of statutory damages available to Sullivan turns on § 504(c)(1) of the Copyright Act:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, *with respect to any one work*, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. *For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.*

17 U.S.C. § 504(c)(1) (emphasis added).

By its terms, § 504(c)(1) limits a plaintiff's recovery to one award of statutory damages for each work infringed. Put another way, Congress focused the inquiry on the number of protected works infringed, not the number of infringements. See *Twin Peaks Prods., Inc. v. Publications Int'l Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993). In doing so, Congress imposed the additional limitation that, in awarding statutory damages, each part of a compilation shall be considered "one work." 17 U.S.C. § 504(c)(1). In construing § 504(c)(1), it is therefore essential to determine not only what constitutes "one work"—a term Congress left undefined in the Copyright

Act—but also when multiple works combine to form a "compilation," a term Congress did define in the statute.

In copyright law, a "work"—as its name implies—reflects an original expression, whether in the form of art, literature, music, or another tangible medium of expression, that may be entitled to protection. See 17 U.S.C. § 102(a). An artist seeking copyright protection for multiple works can do so in a single registration application. See 17 U.S.C. § 408(c)(1) (allowing for a single registration for a group of related works); 37 C.F.R. § 202.3(b)(4) (same); see also 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.18(c) (Rev. Ed. 2019) (discussing the Copyright Act's flexible approach in allowing a single registration for multiple works). The Copyright Office's granting such a single application results in each registered work receiving copyright protection. See *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507, 508 (7th Cir. 1994) (explaining that "[a] certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright" and "[a]n owner of a copyright is protected against unauthorized copying"). Sullivan charted this exact course here, applying to protect what she called "illustration collections" and receiving two certificates of registration from the Copyright Office. These certificates resulted in Sullivan's 33 illustrations being registered and therefore having copyright protection.

The district court began and ended its analysis of the statutory damages question with this same observation. It put its ruling on the scope of statutory damages this way:

> Based on the undisputed fact that plaintiff registered her two illustration collections as a collective or group work under 17 U.S.C.

> § 408(c)(1) and 37 C.F.R. § 202.3(b)(4)(i), and that that identification appears appropriate—or, at least, defendant [Flora] has failed to explain why the copyrighted works do not appropriately fall within that designation—the court conclude[s] that the copyrighted works are collective works, in which contributions, *constituting separate and individual works in themselves,* are assembled into a collective whole.

(Dkt. 240 at 1) (emphasis in the original). The court reinforced its ruling when instructing the jury on the scope of statutory damages it could award Sullivan upon findings of infringement by Flora, explaining that "for purposes of considering a statutory damages award, you may consider *each* illustration in the 7 Sources illustration collection and the Flor-Essence illustration collection as an independent, copyrighted work."

The district court drifted off course in seeing the 33 illustrations as "collective works" without first asking, as § 504(c)(1) requires, whether each illustration constituted "one work" or instead combined to form a "compilation." The misstep becomes apparent upon recognizing that Congress, in defining "compilation" in § 101 of the Copyright Act, made clear that the term "includes collective works." So the consequence of the district court characterizing the 33 illustrations as "collective works" was that the illustrations then also constituted a "compilation" and thus, by operation of § 504(c)(1), "all the parts of a compilation"—each of Sullivan's 33 illustrations—"constitute one work." But that conclusion is at odds with the district court also determining that the Copyright Act authorized the jury to return 33 separate awards of statutory damages for infringement on each of the 33 illustrations.

The knot untangles by returning to the language of § 504(c)(1). The key distinction in § 504(c)(1) is not between a compilation and a collective work—indeed, § 101's definition makes plain that the former includes the latter—but instead between "one work" and a "compilation." Or, stated another way, the proper inquiry under § 504(c)(1) asks whether Sullivan's 33 illustrations constitute 33 individual works or instead are parts of two compilations (corresponding with the two advertising campaigns in which Flora used the illustrations). The district court stopped short of asking this question (or putting it to the jury) by giving controlling weight to the fact that Sullivan registered her illustrations as a group and therefore protected each of the 33 illustrations. That observation, while reflecting an accurate understanding of the registration process, does not resolve the scope of statutory damages available to Sullivan. That answer, we conclude, must come by parsing § 504(c)(1) and distinguishing between a work and a compilation.

Identifying the right question is easier than knowing the right answer, though. And this is where we benefit from not being the first court to consider the scope of statutory damages available under § 504(c)(1)—and, more specifically, the meaning of "one work."

B

Other circuits seem to follow one of two approaches in answering the question presented, though the dividing lines are far from absolute. Start with the Second Circuit and its decision in *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010). The case entailed allegations of infringement on two copyrighted music albums, each with ten songs, and the parties disputing whether statutory damages should be

measured on a per-album or per-song basis. The court observed that each song had separate copyright protection and, in addition to being sold as part of an album, could be purchased individually through retailers like iTunes. See *id.* at 138. Even when bought individually, however, the songs remained part of and indeed were produced and marketed as an album. That fact resolved the statutory damages question because, as the court saw it, "[a]n album falls within the Act's expansive definition of compilation." *Id*. at 140. "Based on a plain reading of the statute," the reasoning followed, "infringement of an album should result in only one statutory damage award." *Id*. at 141. More to it, the court emphasized, the "[Copyright] Act [in § 504(c)(1)] specifically states that all parts of a compilation must be treated as one work for purposes of calculating statutory damages." *Id.* at 142. And, drawing reinforcement from the Copyright Act's definition of compilation, the Second Circuit added that "[t]he fact that each song may have received a separate copyright is irrelevant to this analysis." *Id*. at 141.

In so holding, the Second Circuit distinguished its prior decision in *Twin Peaks Productions v. Publications International*, where the court held that eight distinct statutory damages awards were available for infringement on the copyrighted scripts of eight television episodes that the defendant later combined into a single book. 996 F.2d 1366, 1381 (2d Cir. 1993). Separate awards of statutory damages were appropriate in *Twin Peaks*, the *Bryant* court subsequently explained, because "the *plaintiff* had issued the works separately, as independent television episodes," and it was "the *defendant* [who] printed eight teleplays from the series in one book." 603 F.3d at 141. Even though each episode of Twin Peaks contributed to the drama's broader plot, which unfolded over the course

of a season, the fact remained that the episodes aired at separate times and, in this way, stood on their own enough to avoid being grouped with the other episodes and thus considered a compilation within the meaning of the Copyright Act. The upshot, then, was that the plaintiff in *Twin Peaks* was entitled to eight separate statutory damage awards for each infringed episode. See *Twin Peaks*, 996 F.2d at 1381; see also *WB Music Corp. v. RTC Communication Grp., Inc.*, 445 F.3d 538, 540–41 (2d Cir. 2006) (following the same approach and reversing the district court's limitation of a plaintiff's statutory damages on a per-album basis).

The Second Circuit's approach—embodied, as we see it, in its most recent decision in *Bryant*—gives controlling weight to the last sentence of § 504(c)(1), where Congress directed that, for purposes of assessing statutory damages, "all the parts of a compilation or derivative work constitute one work." The approach has a limiting effect. Take, for instance, the songwriter who produces an album, registers the album under the group registration process made available by 17 U.S.C. § 408(c)(1), only then to learn someone infringed multiple tracks. The artist would be entitled to one and only one award of statutory damages because "it is the copyright holders who issued their works as 'compilations'; they chose to issue Albums," instead of producing each song as independent singles. *Bryant*, 603 F.3d at 141. The Second Circuit's approach, in short, places dispositive weight on the songwriter's bundling of songs—protected though they may be at the individual level—into an album. It is the production and publication of each song as part of an album that limits the songwriter's recovery to one award of statutory damages no matter the infringement that may have occurred at the level of any individual song.

Recognizing this limitation, most other circuits have interpreted § 504(c)(1) a different way. A good illustration comes from the First Circuit's decision in *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1118 (1st Cir. 1993). The court there considered how to award statutory damages for infringement on four episodes of the television series Jade Fox, where the episodes had been registered together on one copyright certificate and later rented or sold in sets containing multiple episodes. Construing § 504(c)(1), the court adopted what it called an "independent economic value test" to determine if each episode of Jade Fox had copyright value unto itself and was therefore an independent work—in statutory terms, "one work"—for purposes of awarding statutory damages. *Id*. at 1116–17.

The First Circuit explained that such a substantive economic inquiry better reflected the value of each episode and gave effect to not only the language Congress used in § 504(c)(1), but also the absence on a broader level of anything in "either the statute or the corresponding regulations that precludes a copyright owner from registering the copyrights in multiple works on a single registration form while still collecting an award of statutory damages for the infringement on each work's copyright." *Id*. at 1117. Applying the test, the First Circuit determined that the evidence before it supported a finding that each episode of Jade Fox, although plainly part of a television series, constituted an independent work entitled to its own award of statutory damages. See *id.* at 1117–18.

The Ninth, Eleventh, and D.C. Circuits follow the First Circuit's approach. See, *e.g.*, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 747 (9th Cir. 2019) (adhering to its discussion in *Columbia Pictures Television, Inc. v. Krypton Bd. of Birmingham, Inc.*,

259 F.3d 1186 (9th Cir. 2001) and explaining that "the question of whether something—like a photo, television episode, or so forth—has 'independent economic value' informs our analysis of whether the photo or episode is a work" within the meaning of § 504(c)(1)); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) (employing the same test to determine "whether each expression has an independent economic value and is, in itself, viable"); *Walt Disney Co. v. Powell*, 897 F.2d 565, 570 (D.C. Cir. 1990) (asking whether certain copyrighted materials are "distinct, viable works with separate economic value and copyright lives" to determine the scope of available statutory damages under § 504(c)(1)).

The Fourth Circuit is the only other circuit to have considered the question presented. Its answer came with mixed signals, following the Second Circuit's approach in *Bryant* but suggesting different facts may fit with a different construction of § 504(c)(1). See *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). In *Xoom*, the court determined that two collections of numerous digital images, protected under two copyright registrations, were compilations and thus only subject to two statutory damages awards under § 504(c)(1). See *id*. at 285 n.8 (explaining that "Imageline is entitled to one award of statutory damages per work infringed because SuperBundle and Master Gallery are *compilations or derivative works* in which Imageline holds copyrights"). At another point in its opinion, however, the Fourth Circuit appeared to agree that "the Copyright Act does not bar multiple awards for statutory damages when one registration includes multiple works." *Id*. at 285. This qualification is substantial and seems to suggest the Fourth Circuit may chart a different

course—perhaps the one followed by most other circuits—on different facts.

## C

Section 504(c)(1) is hardly a model of clarity, especially when considering, as we are here, infringement of multiple protected works and a plaintiff seeking multiple, separate awards of statutory damages. It is not at all surprising that two approaches find recognition in the caselaw of other circuits. In the end, we conclude, in closer keeping with the approach of the First, Ninth, Eleventh, and D.C. Circuits, that § 504(c)(1) requires courts confronted with circumstances with multiple works and multiple infringements to determine, or to charge a jury with fact finding tailored to answering, whether the protected works have value only in and through their composite whole (and thus meet the definition of a "compilation" in § 101) or instead have standalone value at the level of "one work." A protected work has standalone value if the evidence shows that work has distinct and discernable value to the copyright holder. See *Gamma Audio*, 11 F.3d at 1116 (explaining that "separate copyrights are not distinct 'works' unless they can live their own copyright life"—a viability determination that turns on whether the work in question has independent economic value); see also *Feltner*, 89 F.3d at 769; *Walt Disney Co.*, 897 F.2d at 569.

The question at the heart of the Second Circuit's more limited approach in *Bryant*—which focuses on whether the copyright holder marketed and distributed the multiple protected works as individual works or as a compendium of works (like, for example, an album)—is certainly relevant to the inquiry we believe Congress has required in § 504(c)(1). But we also believe the inquiry needs to extend further to

discern and give more fulsome effect to the distinction Congress drew in the text of § 504(c)(1) between "one work" and a "compilation." See *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1281 (11th Cir. 2015) (employing a similar approach to discerning whether multiple photos constituted a compilation or individual works). To stop at the Second Circuit's inquiry does not allow a possibility Congress made available in § 504(c)(1)—a situation where a copyright holder encounters infringement on multiple works available in the market as a group but where discernable value lies at the level of a particular individual work—for example, at the level of a particular photo or song which, although released as part of an album, is likewise marketed and available at the individual level. Sellers regularly allow buyers to acquire a part of a whole and the market assigns value accordingly.

The inquiry and fact finding demanded by § 504(c)(1) is more functional than formal, taking account of the economic value, if any, of a protected work more than the fact that the protection came about by an artist registering multiple works in a single application. The necessary finding requires a focus on where the market assigns value. By way of an analogy, imperfect though it may be, think in the first instance of the multiple protected works as a quilt and then ask whether any one individual patch has discernable, independent economic value—whether once separated from the quilt a particular patch lives its own copyright life (as "one work")—or instead whether the value lies in the patches' combined assembly into the quilt as a whole (as a "compilation").

Our analysis must end here, though, as the record as it presently stands does not allow us to resolve as a factual matter whether all or part of Sullivan's 33 illustrations are

separate works with distinct and discernable value or part of two broader compilations. The district court did not ask (or put to the jury) the questions we see as necessary for resolving the statutory damages question. See *VHT, Inc.*, 918 F.3d at 748 (remanding on similar reasoning for additional fact finding).

This error requires us to vacate the judgment in Sullivan's favor. Our doing so in no way calls the jury's findings of infringement into question. On remand the district court will have ample flexibility to structure the proceedings to enable the requisite findings pertinent to statutory damages.

## III

Invoking an altogether different provision of the Copyright Act, Flora advances a separate and independent challenge to the jury's statutory damages award based on the timing of the company's infringement on Sullivan's copyrighted works. The district court determined that Flora waived this challenge by raising it much too late at trial. We agree.

Section 412 of the Copyright Act prohibits an award of statutory damages for "any infringement of a copyright in an unpublished work commenced before the effective dates of registration." 17 U.S.C. § 412(1). By its terms, § 412 imposes a bar to recovering statutory damages if a defendant can show that any infringement began before the registration of the works in question.

Neither the district court nor jury ever considered the timing bar imposed by § 412. The reason is because Flora raised the § 412 limitation for the first time during the third and final phase of trial—the damages phase—and even then, only at a side bar on an unrelated issue. Flora's doing so surprised the district judge, as the position marked a substantial shift in the

company's trial strategy. All along Flora had sought to avoid liability based on the defense of joint authorship—by arguing that Silver and Sullivan jointly created each of the 33 illustrations—and thus that the company (through Silver's joint ownership) could not possibly be liable for infringement. By invoking § 412 and advancing a timing defense, Flora changed course, recognizing (undoubtedly in response to the jury's verdict in phase two) that it had infringed on Sullivan's works but arguing that the infringement began before she had registered the illustrations. In Flora's view, the timing of the infringement—before Sullivan's registration—triggered the application of § 412 to bar any award of statutory damages.

The district judge reacted to Flora's raising this § 412 argument when it did with meaningful frustration. The court rightly underscored that Flora made no mention of any § 412 defense in its answer, motion to dismiss, or request for summary judgment. Nor, the district court added, did Flora ever say a word about any possible § 412 bar at the jury charge conference—at a time when the court and parties could have considered how to put the infringement-timing question to the jury. Indeed, when asked directly whether either party had concerns with the jury instruction on statutory damages, counsel for Flora responded, "None, Your Honor."

As the district court saw it, then, Flora waited to pursue and raise its newfound § 412 defense until the close of evidence and thus well after either party could have structured its presentation of evidence—as to liability and defenses alike—to address the timing predicate on which application of the damages bar hinges. Or, as the district judge put the point, "by sitting on its challenge until the end of the evidence, defendant left plaintiff and the court to believe that it

had conceded this requirement for an award of statutory damages." Accordingly, the district court concluded that Flora had waived any § 412 timing defense.

We see no error in the district court's conclusion, in no small part because § 412 operates akin to an affirmative defense that Flora should have raised far earlier in the proceedings. Waiting this long resulted in waiver. See *Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) (explaining that a party's unreasonable delay in advancing an argument "is normally a compelling ground for deeming even a good ground waived"). Our cases are clear that waiver, not forfeiture, occurs when a defendant waits until the eleventh hour or beyond to raise an affirmative defense and in doing so prejudices the opposing party. See *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 482 (7th Cir. 2019). "Allowing a last-minute defense that introduces new factual and legal issues after discovery has closed," we have emphasized, "raises the costs of litigation and allows the party that was at least negligent in failing to plead its defense to take unfair advantage of its opposing party." *Id.*

It is hard to see what happened here any other way than the district judge put it: for whatever reason, strategic or inadvertent, Flora waited to raise its timing-of-infringement defense until the jury had already found infringement, leaving the trial record altogether missing evidence on precisely when the infringement began—the lynchpin inquiry under § 412. Without any notice that this change of course was coming, Sullivan had no reason to believe her infringement claim may rise or fall on evidence pinpointing the timing of Flora's infringement on each of the 33 illustrations.

In these circumstances, we cannot say the district court was wrong to conclude that "Flora, *at minimum*, needed to put the timing requirement of § 412 in issue by timely challenging it" and its failure to do so constituted waiver.

**IV**

Flora's final effort on appeal to avoid liability comes in its contention that the district court erred in not setting aside the jury's verdict on the basis that the trial evidence showed beyond dispute that Silver and Sullivan were joint authors of the 33 illustrations. Here too, though, Flora runs into waiver, as the company failed to present this challenge to the district court in response to the jury's adverse verdict. The pathway to that conclusion is straightforward.

Joint authorship is a defense to copyright infringement. See *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009). The defense, as its name implies, turns on whether two or more authors jointly created the work in question. If so, they hold undivided interests in the work and the underlying rights are shared and not exclusive to one or the other authors. See 17 U.S.C. § 201(a); *Janky*, 576 F.3d at 361 ("The benefits of co-authorship are therefore significant: each author may use or license the joint work.").

Throughout the pretrial proceedings, Flora sought to show that Joseph Silver's contributions to Sullivan's illustrations resulted in joint authorship, which in turn would have allowed Silver to authorize Flora's use of the illustrations, eliminating the basis for infringement. A copyright owner cannot infringe its own work. Flora continued to advance the joint authorship defense at trial, moving, for example, on day two for judgment as a matter of law on the issue. See Fed. R.

Civ. P. 50(a). The district court denied the motion, and the case went to the jury. In finding infringement, the jury expressly found (and so answered on the verdict form) that Flora had not carried its burden of showing that the illustrations were the result of a joint effort by Silver and Sullivan.

But Flora never renewed its challenge at any point after the jury returned its verdict in Sullivan's favor. And therein lies the problem. Flora insists on appeal that the district court erred in not keeping the joint authorship question from the jury and failing to grant its Rule 50(a) motion on the issue. Yet this contention runs headlong into the well-settled precept that "a court of appeals may not award judgment due to insufficiency of the evidence where no Rule 50(b) motion was filed after the verdict." *Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 938 (7th Cir. 2006); see also *Lexington Ins. Co. v. Horace Mann Ins. Co.*, 861 F.3d 661, 669 (7th Cir. 2017) (making clear that for a party to seek judgment on appeal, "the requesting party must not only have filed a motion under Rule 50(a), but must also have renewed that motion under Rule 50(b)").

The demands of Rule 50(b) serve a sound purpose. As the Supreme Court has emphasized, the "determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Unitherm v. Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 (2006). This explains why our caselaw is unyielding in requiring a party who believes a jury's verdict lacks a sufficient evidentiary basis to raise that challenge in the district court. It is not enough to rest on having made a pre-verdict sufficiency-of-evidence challenge under Rule 50(a).

To excuse its failure to move under Rule 50(b) following the jury's adverse verdict, Flora argues that we have discretion on appeal to consider pure questions of law. But the question of joint authorship is not a pure question of law: answering whether two or more individuals or entities contributed enough to a work to result in joint authorship requires consideration of facts. And this is precisely why other courts have recognized, properly in our view, that the question is one for a jury to consider guided by an instruction from the district court. See *Medforms, Inc. v. Healthcare Mgmt. Solutions*, 290 F.3d 98, 110 (2d Cir. 2002) (explaining that in a copyright case, "[a]uthorship is generally a question of fact for the jury"). Having failed to lodge a post-verdict challenge under Rule 50(b), Flora waived the very issue it now wants us to review. We cannot do so.

Even if Flora had not waived its joint authorship challenge, we would be quick to conclude that the jury reasonably found Sullivan was the sole author of the 33 illustrations in question. The jury received evidence of the contributions of both Silver and Sullivan and viewed both of the copyright registrations submitted solely in Sullivan's name. The district court also properly instructed the jury that "[a] 'joint work' is a work that two or more persons prepared with the intention that their contributions be merged into inseparable elements of a single work." This instruction mirrored the Copyright Act's definition of a "joint work." See 17 U.S.C. § 101. It also aligns precisely with what we have described as the attributes of a joint work. See *Janky*, 576 F.3d at 362 (explaining that a joint work requires "(1) intent to create a joint work; and (2) contribution of independently copyrightable material").

Asked whether a preponderance of the evidence demonstrated that the copyrighted illustrations were joint works, the jury answered in the negative, finding that Sullivan was the sole author. We cannot say this was an unreasonable result in light of the evidence presented. See *Collins v. Kibort*, 143 F.3d 331, 335 (7th Cir. 1998) (explaining that we will "overturn a jury verdict for the plaintiff only if we conclude that no rational jury could have found for the plaintiff").

## V

We conclude with a brief word in response to Sullivan's cross appeal challenging the district court's refusal to award attorneys' fees. Our review is limited to whether the district court's ruling reflected an abuse of discretion. See *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010).

The Copyright Act affords a district court discretion in awarding attorneys' fees to the prevailing party in an infringement case. See 17 U.S.C. § 505 (explaining that "the court *in its discretion may* allow the recovery of full costs by or against any party" in an infringement case) (emphasis added). The Supreme Court offered further guidance in *Fogerty v. Fantasy, Inc.*, outlining a series of factors for courts to consider when awarding fees. 510 U.S. 517, 534 n.19 (1994) (setting out a series of nonexclusive factors, including frivolousness, motivation, objective unreasonableness of factual or legal positions, and considerations of compensation and deterrence).

In denying Sullivan's fee application, the district court reasoned well within the discretion afforded by Congress. Considering the factors outlined in *Fogerty*, the court saw the case as close on the merits and hard fought by the parties. From there the district court underscored that Sullivan had won a

substantial verdict that would be costly for Flora to satisfy and that, when balancing the totality of what occurred in the litigation, an additional award of fees was neither required nor appropriate, especially in light of the reasonableness of the joint authorship defense Flora pressed at trial. Or, in the district court's own words, "no further compensation or deterrence in the form of an attorneys' fee award [was] necessary." We cannot call the district court's reasoning an abuse of discretion and therefore affirm its denial of Sullivan's fee application.

* * *

For these reasons, we AFFIRM in part and otherwise VACATE the judgment in Sullivan's favor and REMAND to the district court for further proceedings consistent with this opinion.