09-2600-cv
Bryant v. Media Right Productions, Inc.,
Douglas Maxwell, Orchard Enterprises, Inc.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: March 10, 2010                                    Decided: April 27, 2010)

Docket No. 09-2600-cv

- - - - - - - - - - - - - - - - - - -x

ANNE BRYANT, ELLEN BERNFELD,
GLORYVISION, LTD.

                    Plaintiffs-Appellants,

         - v.-                                              09-2600-cv

MEDIA RIGHT PRODUCTIONS, INC.,
DOUGLAS MAXWELL,
ORCHARD ENTERPRISES, INC.

                    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - -x

         Before:        LIVINGSTON, Circuit Judge, and WOOD,[*] District Judge.[**]

         Appeal from a judgment of the United States District Court for the Southern District of

New York (Young, J.[1]) holding that Defendants-Appellees committed direct copyright

---

   [*]  Kimba M. Wood, of the United States District Court for the Southern District of New
York, sitting by designation.

   [**]  The Honorable Rosemary S. Pooler, originally assigned to this panel, did not participate
in the consideration of this appeal.  The remaining two members of the panel, who are in
agreement, have determined this matter.  See Second Circuit Internal Operating Procedure E(b);
28 U.S.C. § 46(d); United States v. Desimone, 140 F.3d 457 (2d Cir. 1999).

infringement, but awarding Plaintiffs-Appellants limited statutory damages and denying them attorneys fees. We affirm.

Patrick J. Monaghan, Jr., Michael Korik, Monaghan, Monaghan, Lamb & Marchisio, LLP, New York, NY, for Appellant.

Mitchell C. Shelowitz, Shelowitz & Associates PLLC, Montvale, NJ, for Appellees.

KIMBA M. WOOD, District Judge:

Plaintiffs-Appellants appeal from an order of the United States District Court for the Southern District of New York (Young, J.) holding that Defendants-Appellees committed direct copyright infringement, and awarding Plaintiffs-Appellants statutory damages but denying them attorneys fees.

Appellants produced two copyrighted albums of music, each of which was composed of ten songs. Appellee Media Right Productions, Inc. ("Media Right") gave the albums to Appellee Orchard Enterprises, Inc. ("Orchard"), who copied and sold them without authorization. The Court awarded Appellants one statutory damage award for each album infringed by each Appellee, a total of four awards, rather than one statutory damage award for each of the songs on the albums (which would have totaled forty awards), as Appellants had sought. The Court also found that Appellants had not proven that the infringement was willful, that Orchard had proven that its infringement was innocent, and that profits from infringing sales were low; the Court thus awarded a total of only $2400 in damages. We conclude that the District Court (1) correctly awarded statutory damages for each album infringed; (2) did not commit clear error in finding that Appellants had failed to prove willfulness and that Orchard had proven its innocence; and

---

[1] William G. Young of the United States District Court of the District of Massachusetts, sitting by designation.

(3) correctly calculated damages.  We also conclude that the District Court did not abuse its discretion by denying attorneys fees.  Accordingly, we affirm.

## I.    <u>**Background**</u>[2]

Appellants Anne Bryant and Ellen Bernfeld are songwriters who own a record label, Appellant Gloryvision Ltd (collectively with Bryant and Bernfeld, "Appellants").  In the late 1990s, Appellants created and produced two albums, <u>Songs for Dogs</u> and <u>Songs for Cats</u> (the "Albums").  They registered the Albums with the United States Copyright Office.  They also separately registered at least some of the twenty songs on the Albums.

On February 24, 2000, Appellants entered into an agreement with Media Right ("Media Right Agreement"), which authorized Media Right to market the Albums in exchange for twenty percent of the proceeds from any sales.  The Agreement did not grant Media Right permission to make copies of the Albums.  If Media Right needed more copies of the Albums, Appellants would provide them.

The Media Right Agreement resulted from conversations between Appellant Ellen Bernfeld ("Bernfeld") and Appellee Douglas Maxwell ("Maxwell"), President of Media Right, during which Maxwell told Bernfeld that Media Right would be distributing music through Orchard, a music wholesaler.

Media Right entered into an agreement with Orchard on February 1, 2000 ("Orchard Agreement").  The Orchard Agreement authorized Orchard to distribute on Media Right's behalf eleven albums listed in the Agreement, two of which were the Albums (apparently in anticipation of the Media Right Agreement).  The Orchard Agreement provided, in relevant part, that:

---

[2]     The facts in this section are taken from the District Court's opinion, <u>Bryant v. Europadisk Ltd.</u>, 07 Civ. 3050 (WGY), 2009 WL 1059777 (S.D.N.Y. Apr. 15, 2009).

> [Media Right] grant[s] [Orchard] . . . non-exclusive rights to sell, distribute and otherwise exploit . . . [Media Right's albums] by any and all means and media (whether now known or existing in the future), including . . . throughout E-stores including . . . those via the Internet, as well as all digital storage, download and transmission rights, whether now known or existing in the future.

In the Orchard Agreement, Media Right warranted that Orchard's use of the Albums would not infringe any copyrights. Maxwell gave Orchard physical copies of the Albums, which bore copyright notices stating that the copyrights for the Albums were held by Appellants.

When Media Right entered into the Orchard Agreement in 2000, Orchard sold only physical copies of recordings. In about April 2004, however, Orchard began making digital copies of the Albums to sell through internet-based music retailers such as iTunes. Internet customers were able to purchase and download digital copies of the Albums and individual songs on the Albums. Orchard did not inform Media Right or Appellants that it was selling digital copies of the Albums and individual songs on the Albums.

From April 1, 2002 to April 8, 2008, Orchard generated $12.14 in revenues from sales of physical copies of the Albums, and $578.91 from downloads of digital copies of the Albums and of individual songs. Media Right's share of these revenues was $413.82, of which $331.06 should have been forwarded to Appellants pursuant to the Media Right Agreement. Because the $413.82 was aggregated with other monies Orchard paid to Media Right, Media Right overlooked that it owed a portion of the payments to Appellants. Media Right, therefore, did not pay Appellants the $331.06 to which they were entitled.

In 2006, Appellants discovered that digital copies of the Albums were available online. On April 16, 2007, Appellants filed a complaint against Appellees in the Southern District of New York, alleging direct and contributory copyright infringement, and seeking statutory damages.

4

In 2008, Appellants and Appellees both moved for summary judgment in the case. They agreed to permit the District Court to treat the motions as a case stated. The Court conducted two evidentiary hearings before issuing its order. The Court held, in relevant part, that Appellees had committed direct copyright infringement by making and selling digital copies of the Albums and the individual songs on the Albums.

The Court awarded Appellants statutory damages in the total amount of $2400, pursuant to Section 504 of the Copyright Act of 1976 (the "Act"). 17 U.S.C. § 504(c). The Act provides that a court can award statutory damages of not less than $750 or more than $30,000, "as the court considers just," for all infringements with respect to one work, and that all parts of a "compilation" constitute one work. 17 U.S.C. § 504(c)(1). If the infringer proves that his infringement was innocent, the court may reduce damages to an amount not less than $200. 17 U.S.C. § 504(c)(2). If the copyright holder proves that infringement was willful, the court may increase the award to no more than $150,000. Id.

The District Court made the following three rulings regarding damages, all of which Appellants contest on appeal.

First, the Court held that the Albums were compilations, and thus that each Appellee was liable for only one award of statutory damages per Album, rather than one award per song, as Appellants had sought. Bryant v. Europadisk Ltd., 07 Civ. 3050 (WGY), 2009 WL 1059777, *6-8 (S.D.N.Y. Apr. 15, 2009).

Second, the Court found that Orchard had proven that its infringement was innocent, and thus ordered Orchard to pay only minimal statutory damages of $200 per Album, for a total of $400. Id. at *8-9.

5

Third, the Court found that Maxwell and Media Right had failed to prove that their infringement was innocent, but that Appellants had failed to prove that Maxwell and Media Right's infringement was willful. Id. The Court found that because neither side had met its burden of proof, and because Appellees' revenues from the Albums were very low, Media Right and Maxwell were jointly and severally liable for an award of only $1000 per Album, for a total of $2000. Id.

The Court did not award Appellants attorneys fees. Dist. Ct. Order, May 12, 2009. Accordingly, the total award to Appellants was $2400. This appeal followed.

## II.    Discussion

Appellants argue that we should vacate the District Court's statutory damage award, contending that: (1) the Court erred in refusing to grant a separate statutory damage award for each song on the Albums; (2) the Court erred in its findings on intent; and (3) the Court erred in determining the amount of damages. Appellants also argue that the Court abused its discretion by refusing to award them attorneys' fees. We address each of these arguments in turn.[3]

### A. The District Court's Decision to Award Statutory Damages on a Per-Album Basis

Appellants contend that the District Court erred in holding that the Albums were compilations, and thus limiting statutory damages to one award for each Album. Appellants argue that each song on the Albums qualifies as a separate work because, according to

---

[3]     Appellants also argue – in one paragraph – that the Court should have awarded separate statutory damages against Maxwell. (Appellants' Br. 39.) Section 504(c)(1) provides that a copyright holder can recover a statutory damage award for all infringements of a work, for which any one infringer is liable individually, or for which two or more infringers are liable jointly and severally. 17 U.S.C. § 504(c)(1). Maxwell is the president of Media Right, and infringed Appellants' copyrights only through Media Right, not individually. Maxwell and Media Right, therefore, are jointly and severally liable for one statutory damage award for each infringed work. The District Court was correct not to award separate damages against Maxwell.

6

Appellants, each song is separately copyrighted,[4] and because Orchard sold the songs individually.

The question of whether a work constitutes a "compilation" for the purposes of statutory damages pursuant to Section 504(c)(1) of the Copyright Act is a mixed question of law and fact. See Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1116 (1st Cir. 1993). We thus review de novo the District Court's decision that the Albums are "compilations." See APL Co. PTF Ltd. v. Blue Water Shipping U.S. Inc., 592 F.3d 108, 110 (2d Cir. 2010). We conclude that the District Court's ruling was correct.

The Copyright Act allows only one award of statutory damages for any "work" infringed. 17 U.S.C. § 504(c)(1). It states that "all the parts of a compilation . . . constitute one work." Id. § 504(c)(1). It defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." Id. § 101. The term compilation includes collected works, which are defined as works "in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective work." Id. The Conference Report that accompanied the Act and explains many of its provisions, states that a "compilation" "results from a process of selecting, bringing together, organizing, and arranging previously existing material of all kinds, regardless of whether . . . the individual items in the material have been or ever could have been subject to copyright."

---

4    Appellants contend that each song on the Albums was copyrighted separately. The District Court found that Appellants had registered all twenty of the songs on the Albums with the Copyright Office. It is not clear from the record, however, whether Appellants actually obtained a separate copyright for each song on the Albums. For the purpose of this decision, we assume that each song on the Albums was copyrighted separately.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 162, <u>reprinted in</u> 1976 U.S.C.C.A.N. 5659 (emphasis added).

An album falls within the Act's expansive definition of compilation. An album is a collection of preexisting materials – songs – that are selected and arranged by the author in a way that results in an original work of authorship – the album. Based on a plain reading of the statute, therefore, infringement of an album should result in only one statutory damage award. The fact that each song may have received a separate copyright is irrelevant to this analysis. <u>See</u> H.R.Rep. No. 1476, 94th Cong., 2d Sess. 162, <u>reprinted in</u> 1976 U.S.C.C.A.N. 5659.

We have addressed in two previous decisions the issue of what constitutes a compilation subject to Section 504(c)(1)'s one-award restriction. <u>See</u> <u>Twin Peaks Prods., Inc. v. Publ'ns. Int'l Ltd.</u>, 996 F.2d 1366, 1381 (2d Cir. 1993); <u>WB Music Corp. v. RTV Comm. Group, Inc.</u>, 445 F.3d 538, 541 (2d Cir. 2006). In both decisions, we focused on whether the plaintiff – the copyright holder – issued its works separately, or together as a unit.

In <u>Twin Peaks</u>, the plaintiff issued each episode of a television series sequentially, each at a different time. The <u>defendant</u> printed eight teleplays from the series in one book. 996 F.2d at 1381. We held that the plaintiff could receive a separate award of statutory damages for each of the eight teleplays because the <u>plaintiff</u> had issued the works separately, as independent television episodes.[5] <u>Id.</u> In <u>WB Music Corp.</u>, the plaintiff had separately issued each of thirteen songs. 445 F.3d at 541. It was the <u>defendant</u> who issued the songs in album form. <u>Id.</u> We held that the plaintiff could receive a separate statutory damage award for each song, because there

---

[5]    We also relied on the facts that the episodes were separately written and separately produced. <u>Twin Peaks</u>, 996 F.2d at 1381. We held that, although the episodes taken together had a common plot line ("Who killed Laura Palmer?"), that did not suffice to render the episodes a "compilation." <u>Id.</u>

was "no evidence . . . that any of the separately copyrighted works were included in a compilation authorized by the [plaintiff]." Id. (emphasis added).

Here, it is the copyright holders who issued their works as "compilations"; they chose to issue Albums. In this situation, the plain language of the Copyright Act limits the copyright holders' statutory damage award to one for each Album.[6]

Appellants argue that the District Court should have allowed a statutory damage award for each song, because each song has "independent economic value": internet customers could listen to and purchase copies of each song, each of which Appellants claim was independently copyrighted. Plaintiffs point to a decision from the First Circuit, Gamma Audio, in which the Court held that a work that is part of a multi-part product can constitute a separate work for the purposes of statutory damages if it has "independent economic value and . . . is viable." 11 F.3d at 1116-17. Applying what that court described as a "functional" test, the court held that each episode of a television show, although released on videotape as part of a complete series, could be the subject of a separate statutory damage award because each episode could be rented and viewed separately. Id. at 1117-18. At least three other circuits have adopted the "independent economic value" test, although to date none has applied the test to an album of music. See MCA

---

[6] The few district courts that have considered whether a compilation is subject to only one statutory damage award have reached the same conclusion. See UMG Recordings, Inc. v. MP3.COM, Inc., 109 F. Supp. 2d 223, 225 (S.D.N.Y. 2000) (Rakoff, J.) (finding that where the infringed works were albums issued by the plaintiff, statutory damages should be awarded on a per-album basis); Country Road Music, Inc. v. MP3.COM, Inc., 279 F. Supp. 2d 325, 332 (S.D.N.Y. 2003); Arista Records, Inc. v. Flea World, Inc., Civ. No. 03-2670, 2006 WL 842883, at *21 (D.N.J. Mar. 31, 2006); see also Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 285 (4th Cir. 2003) (holding that plaintiff could receive only one statutory damage award for its computer clip art software, which contained many individual pieces of clip art, because plaintiff had packaged and sold the clip art in one piece of software, and thus the software constituted a compilation); Stokes Seeds Ltd. v. Geo. W. Park Seed Co., 783 F. Supp. 104, 106 (W.D.N.Y. 1991) (holding that catalog containing many separately copyrighted photographs of plant seedlings constituted a compilation because plaintiff had assembled the photographs into a compilation (the catalog)).

9

Television Ltd. v. Feltner, 89 F.3d 766, 769 (11th Cir. 1996) (holding that each episode of a

television show can be the subject of a separate statutory damage award because each episode

has independent economic value); Columbia Pictures Television v. Krypton Broad. of

Birmingham, Inc., 106 F.3d 284, 295 (9th Cir. 1997) (same) (reversed on other grounds, 523

U.S. 340 (1998)); Walt Disney Co. v. Powell, 897 F.2d 565, 569 (D.C. Cir. 1990) (holding that

plaintiff could not receive a separate statutory damage award for each, separate picture of

Mickey Mouse and Minnie Mouse in different poses, because each picture did not have

independent economic value).  Appellants argue that it is particularly appropriate to apply the

"independent economic value" test to music albums, because music is increasingly available in

digital form, which has made it easier for infringers to break apart albums and sell the album's

songs individually, as Appellees did here.

This Court has never adopted the independent economic value test, and we decline to do

so in this case. [7]  The Act specifically states that all parts of a compilation must be treated as one

work for the purpose of calculating statutory damages.  This language provides no exception for

a part of a compilation that has independent economic value, and the Court will not create such

an exception.  See UMG Recordings, Inc., 109 F. Supp. 2d at 225 (stating that to award statutory

damages on a per-song basis would "make a total mockery of Congress' express mandate that all

parts of a compilation must be treated as a single 'work' for purposes of computing statutory

---

[7]     In Robert Stigwood Group Ltd. v. O'Reilly, we held that each separately copyrighted
song from the musical Jesus Christ Superstar could be the subject of a separate statutory damage
award because each song could "live [its] own copyright life." 530 F.2d 1096, 1104-05 (2d Cir.
1976).  In Stigwood, however, we were awarding statutory damages pursuant to the Copyright
Act of 1909, which provided for a separate statutory damage award "for each infringement that
was separate"; the Copyright Act of 1909 did not expressly limit the number of awards available
for infringement of a compilation. Id. at 1102.  The one-award restriction for compilations was
introduced in the Copyright Act of 1976.  We have previously recognized that the one-award
restriction may render Stigwood's holding inapplicable in cases involving compilations.  See
Twin Peaks, 996 F.2d at 1381.

10

damages"). We cannot disregard the statutory language simply because digital music has made it easier for infringers to make parts of an album available separately. This interpretation of the statute is consistent with the Congressional intent expressed in the Conference Report that accompanied the 1976 Copyright Act, which states that the one-award restriction applies even if the parts of the compilation are "regarded as independent works for other purposes." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 162, reprinted in 1976 U.S.C.C.A.N. 5659, 5778.

Accordingly, we affirm the District Court's decision to treat each Album as a compilation, subject to only one award of statutory damages.

### B. The District Court's Decision on Intent and the Amount of Damages

Appellants contend that the District Court erred in finding that Orchard proved that its conduct was innocent, and that Appellants failed to prove that Appellees' conduct amounted to willful infringement.

Pursuant to Section 504(c)(2) of the Copyright Act, an infringer's intent can affect the amount of statutory damages awarded: only a minimal award may be warranted where the infringment is innocent; a higher award may be warranted where the infringer acted willfully.

We review the district court's findings on intent for clear error. See Fitzgerald Pbl'g Co. v. Baylor Pbl'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986). The burden of proving innocence is on the alleged infringer. The burden of proving willfulness is on the copyright holder. See 17 U.S.C. § 504(c).

### 1. Innocence

The District Court found that Orchard acted innocently because Orchard, in making digital copies, reasonably relied on two provisions of the Orchard Agreement: (1) a provision permitting Orchard to distribute the Albums "by any and all means and media . . . including

11

digital storage, download and transmission . . . .," Orchard Agreement, Appellants App., A-174; and (2) a provision warranting that Orchard's use of the Albums in accordance with the Agreement would not infringe any copyrights, Orchard Agreement, Appellants App., A-174.

We hold that it was not clear error for the District Court to find that it was reasonable for Orchard to believe that it had received the right to copy the Albums.

### 2. Willfulness

A copyright holder seeking to prove that a copier's infringement was willful must show that the infringer "had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility." Twin Peaks, 996 F.2d at 1382.

The District Court found that Appellees did not prove that Maxwell and Media Right acted willfully in infringing Appellees' copyright. The District Court found that it was not unreasonable for Maxwell not to have anticipated that Orchard would distribute digital copies of the Albums, notwithstanding that the Orchard Agreement granted Orchard the right to do so, because Orchard did not distribute digital music in 2000, when the Orchard Agreement was signed. The District Court also found credible Maxwell's testimony at the evidentiary hearing that he had never before marketed recordings that were not his own, and that, in allowing Orchard broad distribution rights, he focused only on his belief that Appellants wanted him to do everything possible to market their Albums. This testimony shows that Maxwell did not have experience marketing music owned by a third party; that he did not fully understand the rights he had obtained under the Media Right Agreement; and that his focus was on maximizing sales of the Albums.

We hold that it was not clear error for the District Court to find that Maxwell and Media Right's infringement was not willful.

12

C.  The District Court's Calculation of Statutory Damages

Appellants also argue that the statutory damages awarded by the District Court were too low.  District courts "enjoy wide discretion . . . in setting the amount of statutory damages." Fitzgerald Pbl'g Co., 807 F.2d at 1116.  We review for clear error the District Court's factual findings supporting its determination of the appropriate level of statutory damages, and we review an award of those damages for abuse of discretion.  Lyons Parntership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 799 (4th Cir. 2001); see also Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1012 (2d Cir. 1995).

When determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infriger's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.  See N.A.S. Impor. Corp. v. Chenson Enter., Inc., 968 F.2d 250, 252-53 (2d Cir. 1993).

The District Court awarded a total of $2400 in statutory damages, based on its finding that Appellees' profits from infringing sales of the Albums and songs were meager,[8] and that the award did not need to be higher to achieve deterrence, because deterrence was effectuated here by Appellees having to pay their own attorneys fees.  We hold that the District Court did not abuse its discretion in calculating statutory damages.

---

[8]  Appellants contended that revenues must have been higher, but offered no evidence to support their claim.

D.  The District Court's Decision Not to Award Attorneys' Fees

Section 505 of the Copyright Act provides that a district court may "in its discretion . . . award a reasonable attorneys fee to the prevailing party" in a copyright action.  17 U.S.C. § 505. The District Court declined to award Appellants attorneys fees.

When determining whether to award attorneys fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence.  See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994).  The third factor – objective unreasonableness – should be given substantial weight.  See Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001).

Here, Appellees' defenses were not objectively unreasonable.  Indeed, Appellees prevailed on several important issues.  Appellees also were reasonable in trying to resolve the case short of trial:  Appellees made an Offer of Judgment in the amount of $3000, which Appellants rejected, in favor of continuing to demand over $1 million in damages, notwithstanding the evidence that Appellees had received less than $600 in revenues from infringing sales.

In these circumstances, the District Court did not abuse its discretion by declining to award attorneys' fees.

**III.    Conclusion**

For the reasons stated above, the order of the District Court is AFFIRMED.