18-498-cv (L)
*Castillo v. G&M Realty L.P.*
**Amended Opinion**

# In the
# United States Court of Appeals
## For the Second Circuit

August Term 2019

Nos. 18-498-cv (L), 18-538-cv (CON)

MARIA CASTILLO, JAMES COCHRAN, LUIS GOMEZ, BIENBENIDO GUERRA, RICHARD MILLER, CARLO NIEVA, KENJI TAKABAYASHI, NICHOLAI KHAN,

*Plaintiffs-Appellees*,

JONATHAN COHEN, SANDRA FABARA, LUIS LAMBOY, ESTEBAN DEL VALLE, RODRIGO HENTER DE REZENDE, WILLIAM TRAMONTOZZI, JR., THOMAS LUCERO, AKIKO MIYAKAMI, CHRISTIAN CORTES, CARLOS GAME, JAMES ROCCO, STEVEN LEW, FRANCISCO FERNANDEZ,

*Plaintiffs-Counter-*
*Defendants-Appellees*,

KAI NIEDERHAUSEN, RODNEY RODRIGUEZ,

*Plaintiffs*,

v.

G&M REALTY L.P., 22-50 JACKSON AVENUE OWNERS, L.P., 22-52 JACKSON AVENUE LLC, ACD CITIVIEW BUILDINGS, LLC, GERALD WOLKOFF,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of New York
Nos. 15-cv-3230 (FB) (RLM), 13-cv-5612 (FB) (RLM),
Frederic Block, District Judge, Presiding.
(Argued August 30, 2019; Decided February 20, 2020;
Amended February 21, 2020) *

---

* This opinion amends the sentence at lines 7-10 of page 14.

Before: PARKER, RAGGI, and LOHIER, *Circuit Judges*.

Defendants-Appellants are developers who destroyed aerosol artwork that Plaintiffs-Appellees had painted on buildings owned by Defendants-Appellants. They appeal from a judgment of the United States District Court for the Eastern District of New York (Block, *J.*) awarding statutory damages to Plaintiffs-Appellees under the Visual Artists Rights Act of 1990 ("VARA"). We hold that the district court correctly determined that temporary artwork may achieve recognized stature so as to be protected from destruction by VARA and that Plaintiffs-Appellees' work had achieved that stature. We also hold that the district court did not err in finding Defendants-Appellants' violations of VARA to be willful and that the district court's award of statutory damages was not an abuse of discretion. Accordingly, the judgment of the district court is

**AFFIRMED.**

ERIC M. BAUM (Juyoun Han, Eisenberg & Baum, LLP, New York, NY, Christopher J. Robinson, Rottenberg Lipman Rich, P.C., New York, NY, *on the brief*), Eisenberg & Baum, LLP, New York, NY, *for Plaintiffs-Appellees*.

MEIR FEDER (James M. Gross, *on the brief*), Jones Day, New York, NY, *for Defendants-Appellants*.

BARRINGTON D. PARKER, Circuit Judge:

Defendants-Appellants G&M Realty L.P., 22-50 Jackson Avenue Owners, L.P., 22-52 Jackson Avenue LLC, ACD Citiview Buildings, LLC, and Gerald

Wolkoff (collectively "Wolkoff") appeal from a judgment of the United States District Court for the Eastern District of New York (Frederic Block, *J.*). The court concluded that Wolkoff violated the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A ("VARA"), by destroying artwork of Plaintiffs-Appellees, artists who created and displayed their work at the 5Pointz site in Long Island City, New York. We hold that the district court correctly concluded that the artwork created by Appellees was protected by VARA and that Wolkoff's violation of the statute was willful. Furthermore, the damages awarded involved no abuse of discretion. Accordingly, we affirm the judgment below.

The facts as found by the district court established that in 2002, Wolkoff undertook to install artwork in a series of dilapidated warehouse buildings that he owned in Long Island City, New York. Wolkoff enlisted Appellee Jonathan Cohen, a distinguished aerosol artist, to turn the warehouses into an exhibition space for artists. Cohen and other artists rented studio spaces in the warehouses and filled the walls with aerosol art, with Cohen serving as curator. Under Cohen's leadership, the site, known as 5Pointz, evolved into a major global center for aerosol art. It attracted thousands of daily visitors, numerous celebrities, and extensive media coverage.

"Creative destruction" was an important feature of the 5Pointz site. Some art at the site achieved permanence, but other art had a short lifespan and was repeatedly painted over. An elaborate system of norms—including Cohen's permission and often consent of the artist whose work was overpainted—governed the painting process. Cohen divided the walls into "short-term rotating walls," where works would generally last for days or weeks, and "longstanding walls," which were more permanent and reserved for the best works at the site. During its lifespan, 5Pointz was home to a total of approximately 10,650 works of art.

In May 2013, Cohen learned that Wolkoff had sought municipal approvals looking to demolish 5Pointz and to build luxury apartments on the site. Seeking to prevent that destruction, Cohen applied to the New York City Landmark Preservation Commission to have 5Pointz designated a site of cultural significance. The application was unsuccessful, as were Cohen's efforts to raise money to purchase the site.

At that point, Cohen, joined by numerous 5Pointz artists, sued under VARA to prevent destruction of the site. VARA, added to the copyright laws in 1990, grants visual artists certain "moral rights" in their work. *See* 17 U.S.C. §

4

106A(a). Specifically, the statute prevents modifications of artwork that are harmful to artists' reputations. *Id.* § 106A(a)(3)(A). The statute also affords artists the right to prevent destruction of their work if that work has achieved "recognized stature" and carries over this protection even after the work is sold. *Id.* § 106A(a)(3)(B). Under §§ 504(b) and (c) an artist who establishes a violation of VARA may obtain actual damages and profits or statutory damages, which are enhanced if the artist proves that a violation was willful.

Early in the litigation, Plaintiffs applied for a temporary restraining order to prevent the demolition of the site, which the district court granted. *See Cohen v. G&M Realty L.P.*, 988 F. Supp. 2d 212, 214 n.1 (E.D.N.Y. 2013). As the TRO expired, Plaintiffs applied for a preliminary injunction. On November 12, 2013, the court denied the application in a minute order but told the parties that a written opinion would soon follow. *See id.* at 214.

That night, Wolkoff began to destroy the artwork. He banned the artists from the site and refused them permission to recover any work that could be removed. Several nights later (and before the district court's written opinion could issue), Wolkoff deployed a group of workmen who, at his instruction, whitewashed the art.

5

On November 20, 2013, the district court issued its opinion denying the preliminary injunction. Judge Block concluded that, although some of the 5Pointz paintings may have achieved recognized stature, resolution of that question was best reserved for trial. The court also decided that, given the transitory nature of much of the work, preliminary injunctive relief was inappropriate and that the monetary damages available under VARA could remediate any injury proved at trial.

Following the destruction of the art, nine additional artists sued Wolkoff. The two lawsuits were consolidated for trial, which would primarily address whether the artwork had achieved recognized stature and, if it had, the value of the art Wolkoff destroyed. The three-week trial included testimony from 29 witnesses and saw the admission of voluminous documentary evidence.

Although Plaintiffs had initially demanded a trial by jury, near the conclusion of the trial, the parties agreed to waive a jury, and the district court converted it to an advisory jury. On November 15, 2017, the advisory jury returned its verdict. It made individualized findings as to each artist and work and found violations of VARA as to 36 of the 49 works that were whitewashed. More precisely, the advisory jury found that 28 works had achieved recognized

6

stature and had been unlawfully destroyed and that 8 other works had been mutilated or distorted to the detriment of the artists' reputations. It recommended an award of $545,750 in actual damages and $651,750 in statutory damages.

On February 12, 2018, the district court issued its findings of fact and conclusions of law. Drawing on a vast record, the court found that 45 of the works had achieved recognized stature, that Wolkoff had violated VARA by destroying them, and that the violation was willful. More specifically, the court observed that the works "reflect[ed] striking technical and artistic mastery and vision worthy of display in prominent museums if not on the walls of 5Pointz." S. App'x at 13. The findings emphasized Cohen's prominence in the world of aerosol art, the significance of his process of selecting the artists who could exhibit at 5Pointz, and the fact that, while much of the art was temporary, other works were on display for several years. Judge Block credited the artists' evidence of outside recognition of the 5Pointz works and expert testimony as to the works' stature. The court declined to impose liability with respect to the four remaining works because they had not achieved long-term preservation, were

insufficiently discussed outside of 5Pointz, and were not modified to the detriment of the artists' reputations.

Where a violation of VARA is established, the statute permits the injured party to recover either actual damages and profits or statutory damages. 17 U.S.C. § 504. The statute fixes statutory damages between $750 and $30,000 per work but authorizes damages of up to $150,000 per work if a litigant proves that a violation was "willful." *Id.* § 504(c). There was extensive expert testimony as to actual damages. Elizabeth Littlejohn, the artists' expert, testified that each of the works in question had a substantial monetary value, employing a complex formula that attempted to scale that value to account for the relative merit and recognition of each work. On the other hand, Christopher Gaillard, Wolkoff's expert, testified that, given the difficulties of removing and selling the 5Pointz paintings and the 5Pointz artists' limited sales history, the destroyed works did not have a reliable market value. Ultimately, the district court concluded that it could not reliably fix the market value of the destroyed paintings and, for that reason, declined to award actual damages. The court said that Littlejohn's formula was flawed and that Gaillard credibly testified to challenges that would impede calculation of a market value.

Nonetheless, the court did award statutory damages. It determined that statutory damages would serve to sanction Wolkoff's conduct and to vindicate the policies behind VARA. In addition, and in accord with the advisory jury's verdict, the court found that Wolkoff had acted willfully. This finding was based on Wolkoff's awareness of the ongoing VARA litigation and his refusal to afford the artists the 90-day opportunity provided by the statute to salvage their artwork, some of which was removable. *See* 17 U.S.C. § 113(d)(2)(B). Judge Block was unpersuaded by Wolkoff's assertion that he whitewashed the artwork to prevent the artists from engaging in disruption and disorderly behavior at the site. Instead, he found that Wolkoff acted out of "pure pique and revenge for the nerve of the plaintiffs to sue to attempt to prevent the destruction of their art." S. App'x at 44. Judge Block awarded the maximum amount of statutory damages: $150,000 for each of the 45 works, for a total of $6.75 million.

Appellants then moved, pursuant to Fed. R. Civ. P. 52(b) and 59(a), to set aside the court's findings of fact and conclusions of law and to retry the case. The district court denied this motion and, in a lengthy appendix, marshalled the evidence in the record supporting the court's findings as to the recognized stature of each work in question.

9

The court also offered additional support for its finding of willfulness. The court concluded that Wolkoff's affidavit testimony submitted during the preliminary injunction proceedings contained material untruths. Wolkoff's affidavit stated that the demolition of 5Pointz had to be completed by the beginning of 2014, with construction to commence in April 2014. At trial, however, Wolkoff testified that he did not apply for a demolition permit until March 2014. The district court stated that it would have granted the preliminary injunction had Wolkoff testified earlier that demolition could be delayed until March. This appeal followed.

**DISCUSSION**

In reviewing a district court's decision in a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. Mixed questions of law and fact are also reviewed *de novo*. *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001).

I.

VARA creates a scheme of moral rights for artists. "The right of attribution generally consists of the right of an artist to be recognized by name as the author of his work or to publish anonymously or pseudonymously . . . ." *Carter v.*

10

*Helmsley-Spear, Inc.*, 71 F.3d 77, 81 (2d Cir. 1995). It further includes the right to prevent the artist's work from being attributed to another and to prevent the use of the artist's name on works created by others. *Id.* "The right of integrity allows the [artist] to prevent any deforming or mutilating changes to his work, even after title in the work has been transferred." *Id.*[1]

Most importantly for this appeal, VARA gives "the author of a work of visual art" the right "to prevent any destruction of a work of recognized stature" and provides that "any intentional or grossly negligent destruction of that work is a violation of that right." 17 U.S.C. § 106A(a)(3)(B); *see also Carter*, 71 F.3d at 83. VARA further permits the artist "to prevent any intentional distortion, mutilation, or other modification of [his or her work] which would be prejudicial to his or her honor or reputation," and provides that "any intentional distortion, mutilation, or modification of that work is a violation of that right." 17 U.S.C. § 106A(a)(3)(A). The latter provision applies regardless of a work's stature. These rights may not be transferred, but they "may be waived if the author expressly

[1] The statute recognizes that, unlike novelists or composers, for example, visual artists depend on the integrity of the physical manifestations of their works. Artists' moral rights "spring from a belief that an artist in the process of creation injects his spirit into the work and that the artist's personality, as well as the integrity of the work, should therefore be protected and preserved." *Carter*, 71 F.3d at 81.

agrees to such waiver in a written instrument signed by the author." *Id.* §

106A(e)(1).

Additionally, the statute contains specific provisions governing artwork incorporated into a building. If the artwork is incorporated "in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work," then the artist's rights may be waived if and only if he "consented to the installation of the work in the building . . . in a written instrument." *Id.* § 113(d)(1). This instrument must be "signed by the owner of the building and the author" and must "specif[y] that the installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal." *Id.*[2] However, "[i]f the owner of a building wishes to remove a work of visual art which is a part of such building and which can be removed from the building without the destruction, distortion, mutilation, or other modification of the work," then the artist's rights prevail unless one of two things has occurred. *Id.* § 113(d)(2). First, the building's owner "has made a diligent, good faith attempt without success to

---

[2] The statute contains additional provisions regarding works installed prior to its effective date, but those provisions are impertinent here, as all relevant events transpired long after VARA became effective.

12

notify the author of the owner's intended action affecting the work of visual art." *Id.* Or second, the owner has "provide[d] such notice in writing and the person so notified failed, within 90 days after receiving such notice, either to remove the work or to pay for its removal." *Id.*

Damages for violations of VARA's rights of attribution and integrity are governed by general copyright law and include both actual and statutory damages. Statutory damages may range from $750 to $30,000 per work "as the court considers just." *Id.* § 504(c)(1). However, if "the [artist] sustains the burden of proving, and the court finds, that [a violation of VARA] was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000 [per work]." *Id.* § 504(c)(2).

## II.

The crux of the parties' dispute on this appeal is whether the works at 5Pointz were works of "recognized stature," thereby protected from destruction under § 106A(a)(3)(B). We conclude that a work is of recognized stature when it is one of high quality, status, or caliber that has been acknowledged as such by a relevant community. *See Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 324-25 (S.D.N.Y. 1994), *aff'd in part, vacated in part, rev'd in part*, 71 F.3d 77; *see also, e.g.,*

*Martin v. City of Indianapolis*, 192 F.3d 608, 612 (7th Cir. 1999). A work's high quality, status, or caliber is its stature, and the acknowledgement of that stature speaks to the work's recognition.

The most important component of stature will generally be artistic quality. The relevant community will typically be the artistic community, comprising art historians, art critics, museum curators, gallerists, prominent artists, and other experts. Since recognized stature is necessarily a fluid concept, we can conceive of circumstances under which, for example, a "poor" work by an otherwise highly regarded artist nonetheless merits protection from destruction under VARA. This approach helps to ensure that VARA protects "the public interest in preserving [the] nation's culture," *Carter*, 71 F.3d at 81. This approach also ensures that the personal judgment of the court is not the determinative factor in the court's analysis. *See* Christopher J. Robinson, *The "Recognized Stature" Standard in the Visual Artists Rights Act*, 68 Fordham L. Rev. 1935, 1945 n.84 (2000).

After all, we are mindful of Justice Holmes's cautionary observation that "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of [visual art]," *Bleistein v.*

14

*Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903); *accord Pollara v. Seymour*, 344 F.3d 265, 271 (2d Cir. 2003) ("We steer clear of an interpretation of VARA that would require courts to assess . . . the worth of a purported work of visual art . . . ."). For that reason, aside from the rare case where an artist or work is of such prominence that the issue of recognized stature need not be tried, expert testimony or substantial evidence of non-expert recognition will generally be required to establish recognized stature.

III.

Accordingly, to establish a violation of VARA in this case, the artists were required to demonstrate that their work had achieved recognized stature. Judge Block found that they did so. He concluded that "the plaintiffs adduced such a plethora of exhibits and credible testimony, including the testimony of a highly regarded expert, that even under the most restrictive of evidentiary standards almost all of the plaintiffs' works easily qualify as works of recognized stature." S. App'x at 30. These findings of fact are reviewable only for clear error. *See* Drew Thornley, *The Visual Artists Rights Act's "Recognized Stature" Provision*, 67 Clev. St. L. Rev. 351, 365 n.81 (2019) ("[R]ecognized stature is a question of fact."). "A finding is 'clearly erroneous' when although there is evidence to support it, the

15

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wu Lin v. Lynch*, 813 F.3d 122, 132 (2d Cir. 2016) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Appellants do not hurdle this high bar.

In attempting to do so, Wolkoff takes issue with a number of the decisions Judge Block made in the process of reaching his conclusions. The proceedings below were contested by able counsel and involved voluminous exhibits and extensive lay and expert testimony. On this appeal, Wolkoff would have us revisit and reconsider a number of those decisions that were debatable. But on this appeal, Wolkoff must demonstrate that Judge Block abused his discretion or that findings of fact he made were clearly erroneous, not simply debatable.

Initially, Wolkoff contends that the great majority of the works in question were temporary ones which, for that reason, could not meet the recognized stature requirement. We disagree. We see nothing in VARA that excludes temporary artwork from attaining recognized stature. Unhelpful to this contention is the fact that Wolkoff's own expert acknowledged that temporary artwork can achieve recognized stature.

The statute does not adopt categories of "permanent" and "temporary" artwork, much less include a definition of these terms. VARA is distinctive in that "[a] work of visual art is defined by the Act in terms both positive (what it is) and negative (what it is not)." *Carter*, 71 F.3d at 84. In narrowing the scope of the statute, Congress adopted a highly specific definition of visual art. *See* 17 U.S.C. § 101. In light of this specificity, we see no justification for adopting an additional requirement not included by Congress, even if that requirement is styled as a component of recognized stature. To do so would be to upset the balance achieved by the legislature.

Additionally, at least as recently as 2005, New York City saw a clear instance where temporary artwork achieved recognized stature. That winter, artists Christo Vladimirov Javacheff and Jeanne-Claude Denat, known collectively as "Christo," installed 7,503 orange draped gates in Central Park. This work, known as "The Gates," lasted only two weeks but was the subject of significant critical acclaim and attention, not just from the art world but also from the general public. *See* Richard Chused, *Moral Rights: The Anti-Rebellion Graffiti Heritage of 5Pointz*, 41 Colum. J.L. & Arts 583, 597-98 (2018). As Wolkoff concedes,

17

"The Gates" achieved recognized stature and would have been protected under VARA.

In recent years, "street art," much of which is "temporary," has emerged as a major category of contemporary art. As one scholar has noted, "street art" has "blossomed into far more than spray-painted tags and quickly vanishing pieces . . . painted by rebellious urbanites. In some quarters, it has become high art." *Id.* at 583. For example, noted street artist Banksy has appeared alongside President Barack Obama and Apple founder Steve Jobs on *Time* magazine's list of the world's 100 most influential people.[3] Though often painted on building walls where it may be subject to overpainting, Banksy's work is nonetheless acknowledged, both by the art community and the general public, as of significant artistic merit and cultural importance. Famously, Banksy's *Girl with a Balloon* self-destructed after selling for $1.4 million at Sotheby's, but, as with Banksy's street art, the temporary quality of this work has only added to its recognition.[4]

---

[3] Shepard Fairey, *Banksy*, Time (Apr. 29, 2010), http://content.time.com/time/specials/packages/article/0,28804,1984685_1984940_1984945,00.html.

[4] Scott Reyburn, *How Banksy's Prank Might Boost His Prices: 'It's a Part of Art History'*, N.Y. Times (Oct. 7, 2018), https://www.nytimes.com/2018/10/07/arts/design/banksy-artwork-painting.html.

A Banksy painting at 5Pointz would have possessed recognized stature, even if it were temporary.[5] Even if "The Gates" had been replaced with another art exhibit, that work would have maintained its recognized stature. Although a work's short lifespan means that there will be fewer opportunities for the work to be viewed and evaluated, the temporary nature of the art is not a bar to recognized stature.

The district court correctly observed that when Congress wanted to impose durational limits on work subject to VARA, it knew how to do so. For example, the statute provides that "[t]he modification of a work of visual art which is a result of the passage of time or the inherent nature of the materials is not a distortion, mutilation, or other modification described in subsection (a)(3)(A)." 17 U.S.C. § 106A(c)(1). For that reason, the gradual erosion of outdoor artwork exposed to the elements or the melting of an ice sculpture does not threaten liability. Congress also imposed a durational limit insofar as the statute protects only works that are "fixed"—"sufficiently permanent . . . to be perceived

---

[5] Banksy himself has participated in creative destruction, which has only drawn further attention to his work. The documentary *Graffiti Wars* (2011), for example, describes a creative feud between Banksy and rival artist King Robbo, which involved repeated modification and overpainting of each other's work. The feud did not detract from the recognition or stature of either artist's work.

19

. . . for a period of more than transitory duration." *Id.* §§ 101, 102(a). We have held that a work that exists for only 1.2 seconds is of merely transitory duration but have noted with approval cases holding that a work "embodied . . . for at least several minutes" is of more than transitory duration. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 127-28 (2d Cir. 2008). It is undisputed that the 5Pointz works survived far longer than this and therefore satisfied the statute's minimal durational requirement.

As a variation on the theme that temporary artwork does not merit VARA protection, Wolkoff contends that because the artists were aware that the 5Pointz buildings might eventually be torn down, they should have expected their work to be destroyed.[6] The district court correctly observed, however, that VARA accounts for this possibility. Under § 113(d), if the art at 5Pointz was incorporated into the site such that it could not be removed without being destroyed, then Wolkoff was required to obtain "a written instrument . . . that [was] signed by the owner of the building and the [artist] and that specifie[d] that installation of the work may subject the work to destruction, distortion,

---

[6] Although Cohen acknowledged his awareness that the buildings would eventually be torn down, other plaintiffs testified that they were unaware of Appellants' plans.

20

mutilation, or other modification, by reason of its removal." 17 U.S.C. § 113(d)(1)(B). It is undisputed that no such instrument was executed. If, on the other hand, the 5Pointz art could have been safely removed, then Wolkoff was required to provide written notice of the planned demolition and to allow the artists 90 days to remove the work or to pay for its removal. *See id.* § 113(d)(2)(B). Again, it is undisputed that Wolkoff did none of this.

## IV.

In addition to his contention that temporary artwork cannot achieve recognized stature, Wolkoff argues that the district court erred in several other respects. He contends that the court erroneously focused on recognized quality, rather than recognized stature, and that, contrary to the approach allegedly taken by the district court, recognized stature must be assessed at the time of a work's destruction, not at the time of trial. He argues that the court improperly credited the testimony of Renee Vara, the artists' expert, because she had not actually seen certain of the works prior to their destruction and had based her testimony on images she had examined. Finally, Wolkoff objects to the district court's reliance on Jonathan Cohen's testimony about his curation of the artwork, as well as its consideration of the overall quality of 5Pointz as a site.

21

None of these contentions, considered separately or in the aggregate, convinces us that any of Judge Block's findings were clearly erroneous. There is no merit to Wolkoff's contention that the court improperly focused on recognized quality as opposed to recognized stature. The court's detailed findings are dispositive on this point. Nor are we persuaded that the district court evaluated the works' recognition at the time of trial, since it explicitly stated that the "focus of [its] decision was the recognition the works achieved prior to the whitewash." S. App'x at 126. In any event, the quality of a work, assessed by an expert after it has been destroyed, can be probative of its pre-destruction quality, status, or caliber.

Nor do we see merit in Wolkoff's criticism of the court's decision to credit the artists' experts. As is almost always the case where competing expert testimony is adduced, the trier of fact accepts one side's experts over the other's. Judge Block did so here and gave sound reasons for his choice. Renee Vara, the artists' expert, testified to the high artistic merit of the 5Pointz art but also testified that she had not seen the works before their destruction and had assessed them on the basis of images. We see nothing wrong and certainly

22

nothing clearly erroneous with this approach, one well within a district court's broad discretion to accept or reject evidence.

Next, Appellants object to the district court's reliance on Jonathan Cohen's testimony about his curation of the artwork. The district court reasoned that Cohen's selection process, which involved review of a portfolio of an artist's work and a plan for his or her 5Pointz project, screened for works of stature. Appellants, however, contend that this determination was irrelevant because Cohen made his evaluation before the artists painted their 5Pointz works. Nonetheless, the district court cogently reasoned that a respected aerosol artist's determination that another aerosol artist's work is worthy of display is appropriate evidence of stature. An artist whose merit has been recognized by another prominent artist, museum curator, or art critic is more likely to create work of recognized stature than an artist who has not been screened. This inference is even stronger where, as here, Cohen reviewed a plan for the subject work before allowing it to be painted.[7] Accepting and crediting such testimony

---

[7] The House Judiciary Committee Report on VARA confirms our conclusion that an artist's "pre-existing standing in the artistic community" is relevant to "recognized stature." H.R. Rep. No. 101-514 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 6915, 6925. *See generally United States v. Epskamp*, 832 F.3d 154, 165 (2d Cir. 2016) (noting that legislative history may be invoked for confirmatory purposes). Indeed, several courts have recognized the possibility that, in extreme

easily falls within a district court's trial management responsibilities and in this instance involved no abuse of discretion or clear error.

Finally, Wolkoff contends that the district court erroneously focused on the stature of the 5Pointz site rather than the individual 5Pointz works. Yet again we see no error. The district court did not focus exclusively on the stature of the site. The court considered the individual works at the site and determined that some were not of recognized stature. Setting that aside, we easily conclude that the site of a work is relevant to its recognition and stature and may, in certain cases, render the recognition and stature of a work beyond question. Appearance at a major site—*e.g.*, the Louvre or the Prado—ensures that a work will be recognized, that is, seen and appreciated by the public and the art community. The appearance of a work of art at a curated site such as a museum or 5Pointz means that the work has been deemed meritorious by the curator and therefore

---

cases, an artist's prominence might render all of his work of "recognized stature," even if particular works are unknown to the public. *E.g.*, *Scott v. Dixon*, 309 F. Supp. 2d 395, 400 (E.D.N.Y. 2004) ("[T]he court can imagine a set of circumstances where an artist's work is of such recognized stature that any work by that artist would be subject to VARA's protection . . . ."); *Lubner v. City of Los Angeles*, 45 Cal. App. 4th 525, 531 (1996) (inferring that art was "of recognized stature" because the creators were "recognized artists who have created and exhibited their paintings and drawings for over 40 years" (citing *Carter*, 861 F. Supp. at 325)).

24

is evidence of stature. When the curator is distinguished, his selection of the work is especially probative. Consequently, we see no error when the district court considered the 5Pointz site itself as some evidence of the works' recognized stature.

The evidence before the district court was voluminous—sufficient to persuade both the advisory jury and Judge Block. In addition to extensive lay testimony and documentary evidence, it included much expert testimony, which is often the linchpin of claims of "recognized stature." *See Carter*, 861 F. Supp. at 325. The evidence supporting the district court's findings is vast, and we do not arrive at "the definite and firm conviction that a mistake has been committed." *Wu Lin*, 813 F.3d at 126. Because the district court applied the correct legal standard and did not commit clear error, its determination as to liability is affirmed.

## V.

Appellants next challenge the district court's award of damages. The court did not award actual damages because it could not quantify the market value of the 5Pointz art. However, the court found that Appellants' violation of VARA was willful, and the advisory jury arrived at the same conclusion. *See* 17 U.S.C. §

25

504(c)(2). A violation is willful when a defendant had knowledge that its conduct was unlawful or recklessly disregarded that possibility. *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010).

We review the district court's finding of willfulness for clear error, and we see none. *See 4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*, 933 F.3d 202, 209 (2d Cir. 2019). As Judge Block found, Wolkoff admitted his awareness, prior to destroying 5Pointz, that the artists were pressing VARA claims.[8] Additionally, VARA contains provisions limiting artists' rights vis-à-vis building owners when owners give them 90 days' notice and the opportunity to remove their artwork, 17 U.S.C. § 113(d)(2), but Wolkoff testified that, although he was advised by counsel both before and after the destruction, he chose "to hire people to whitewash[] it in one shot instead of *waiting for three months*," S. App'x at 43 (alteration in original). The district court found that this testimony evinced a deliberate choice to violate VARA rather than to follow the statutory notice

---

[8] Appellants point out that only some of the present plaintiffs had advanced claims before the artwork was whitewashed. Nonetheless, claims by even some of the artists sufficed to notify Appellants that the 5Pointz artists' rights under VARA could be implicated by destroying the artwork. Moreover, in whitewashing the artwork, Appellants did not differentiate between the works involved in ongoing litigation and those whose creators sued only later.

procedures. Wolkoff did not help his cause when he later reminded the district court that he "would make the same decision today." J. App'x at 2427.

Most troubling to the district court and to us is Wolkoff's decision to whitewash the artwork at all. Nothing in the record indicates that it was necessary to whitewash the artwork before beginning construction of the apartments. The district court found that Wolkoff could have allowed the artwork to remain visible until demolition began, giving the artists time to photograph or to recover their work. Instead, he destroyed the work immediately after the district court denied the preliminary injunction and before the district court could finalize its promised written opinion.

Wolkoff testified that he whitewashed the work to prevent the artists from illegally salvaging their work. However, he offered no basis for this belief and, to the contrary, testified that the artists had always behaved lawfully. The district court was entitled to conclude, based on this record, that Wolkoff acted willfully and was liable for enhanced statutory damages.

## VI.

Finally, we address Wolkoff's challenge to the amount of the statutory damages awarded—$6,750,000—the maximum amount allowed. District courts

27

enjoy wide discretion in setting statutory damages. *Bryant*, 603 F.3d at 143. We review the award of those damages for abuse of discretion. *Id.* To find an abuse of discretion, we must be convinced that the district court based its decision on an error of law, applied the incorrect legal standard, made a clearly erroneous factual finding, or reached a conclusion that cannot be located within the range of permissible decisions. *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018). We see no abuse here.

The district court carefully considered the six factors relevant to a determination of statutory damages and concluded that "Wolkoff rings the bell on each relevant factor." S. App'x at 45. Those six, drawn from copyright law, are "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant*, 603 F.3d at 144.

First, Wolkoff's state of mind is documented in the district court's extensive finding on willfulness, which we see no reason to disturb. In other respects, this factor cuts in the artists' favor. As the district court properly found,

28

Wolkoff, a sophisticated real estate developer, was "willing to run the risk of being held liable for substantial statutory damages rather than to jeopardize his multimillion dollar luxury condo project." S. App'x at 45 n.20. Moreover, Wolkoff whitewashed the artworks without any genuine business need to do so. It was simply, as the district court found, an "act of pure pique and revenge" toward the artists who had sued him. S. App'x at 44. As the district court also found, Wolkoff set out in the dark of night, using the cheapest paint available, standing behind his workers and urging them to "keep painting" and "paint everything." J. App'x at 2423. The whitewashing did not end the conflict in a single evening. The effects lingered for almost a year. The district court noted that the sloppy, half-hearted nature of the whitewashing left the works easily visible under layers of cheap white paint, reminding the artists on a daily basis of what had happened to them. Moreover, the mutilated artworks were visible to millions of people passing the site on the subway.

The lost revenue prong is not as straightforward but nonetheless also tips toward the artists. The district court declined to award actual damages, which Wolkoff takes to mean that the artists suffered no loss in revenue. However, as the district court said, this decision was based on the difficulty of quantifying

29

Appellees' loss, not on the absence of any loss. Unlike actual damages, statutory damages do not require the precise monetary quantification of injury. *See, e.g.*, *Davis v. The Gap, Inc.*, 246 F.3d 152, 170 (2d Cir. 2001); *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989). Consequently, the district court was within its discretion in determining that Appellees' loss was significant, for purposes of statutory damages, but not compensable through actual damages. As the district court expressly recognized, "[t]he value of 5Pointz to the artists' careers was significant, and its loss, though difficult to quantify, precluded future opportunities and acclaim." S. App'x at 48.

The deterrent effect on the infringer and third parties also supports the amount of statutory damages imposed by the court. Wolkoff admitted that he had no remorse for his actions. To the contrary he confessed that he "would make the same decision today." J. App'x at 2427. In these circumstances, a maximum statutory award could serve to deter Wolkoff from future violations of VARA. It could further encourage other building owners to negotiate in good faith with artists whose works are incorporated into structures and to abide by the 90-day notice provision set forth in VARA when incorporated art can be removed without destruction or other modification.

The final factor—the conduct and attitude of the parties—also cuts in favor of the maximum statutory award. During the preliminary injunction phase, Wolkoff testified that it was critical that demolition of the site occur within a few months at most because otherwise he stood to lose millions of dollars in credits and possibly the entire project. Wolkoff later changed his testimony and stated that at the time of the preliminary injunction hearing, there was at most a "possibility" that a delay would have caused him financial loss. S. App'x at 114. Subsequently, the evidence at trial established that Wolkoff had not even applied for a demolition permit until four months after the whitewashing, and he admitted that he suffered no loss for the delay. The district court described these statements as "conscious material misrepresentation[s]" and noted that had they not been made, it would have granted the preliminary injunction. S. App'x at 116.

In contrast, throughout the proceedings below, the artists complied with what the law required. Cohen sought landmark designation and, when that option became unavailable, sought to purchase the site. Judge Block noted that the artists "conducted themselves with dignity, maturity, respect, and at all times within the law." S. App'x at 49. In sum, we conclude that the district court

31

appropriately analyzed each relevant factor and see no abuse of discretion. We have considered Wolkoff's other contentions and conclude that they lack merit.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.